Stuart HOLIFIELD *v.* ARKANSAS ALCOHOLIC BEVERAGE CONTROL BOARD and Mac CARDER, Administrator

81-98                                   619 S.W. 2d 621

Supreme Court of Arkansas
Opinion delivered July 6, 1981
[Rehearing denied September 14, 1981.]

306

Rhine, Rhine & Young, by: Robert E. Young, for appellant.

Donald R. Bennett, for appellees.

STEELE HAYS, Justice. Stuart Holifield appeals a judgment of the Greene Circuit Court affirming a revocation of his beer license by the Alcoholic Beverage Control Board. The circuit court found the Board acted within its powers and that its findings were supported by substantial evidence. We affirm.

Appellant holds Permit No. 2265 to sell beer at retail to patrons of the P & L Club at Paragould. Agents of the Board observed violations at the club on several occasions during December 1978 and notice was given appellant outlining five specific charges. After a hearing the Director entered an order suspending appellant's permit for 30 days with a year's probation. Appellant appealed to the full Board and after a second hearing the Board issued an order revoking appellant's permit. The order of the Board was then appealed to the Greene Circuit Court, which affirmed the Board.

Before the Board, police officers of the city of Paragould and ABC agents testified to a number of violations of law and regulations: staying open after lawful hours; selling beer after hours; drinking by appellant and employees while on duty and permitting hard liquor on the premises. Much was made of the events of December 31, a Sunday. Officers

and agents raided the club at about 10:30 at night to find 150 people in the club with mixed drinks, beer and bottles of whiskey, vodka and wine. Beer cans and 21 bottles of whiskey were confiscated. There was testimony that one customer was drunk and belligerent toward the officers.

Appellant's testimony consisted largely of the denial of the charges and explaining the apparent violations. He said sometimes customers would order a six-pack to go before closing time but would not pick it up until they left the club, thus accounting for the delivery of beer after hours. Appellant denied that liquor was consumed with his knowledge. He admitted drinking six or seven beers at times but denied that he was "on-duty." Several witnesses said they had never seen violations, that the club was well managed. Appellant's explanation of the December 31 event was that this was a "private" New Year's Eve party; that his attorney had written to the Board the preceding October to ask whether a business with an on-premises beer permit could remain open after 1 a.m. on weekdays and 12 o'clock on Sundays to sell food and carbonated beverages, provided no beer or alcoholic beverages were sold or consumed during those times and he assumed from the response that it was permissible for him to hold the function. He admitted that he had sold tickets at $6.00 a person for the event. He explained the presence of alcoholic beverages by the fact that it was dark and that among 150 people they had found "only 20 or so bottles," which he regarded as negligible. Appellant said that he had discussed the function during the afternoon with a local ABC agent, Mr. J. C. Dollins, and that he was warned against the event.

For reversal appellant insists that under Ark. Stat. Ann. § 48-1312 (Repl. 1977) he is entitled to notice that his permit was subject to revocation, rather than mere suspension. He cites no authority for the point and we find nothing to support this assertion. The statute cited provides only that proceedings for either suspension or revocation of a license shall be before the Director, in accordance with rules not inconsistent with law, without strict rules of evidence, and that no license shall be revoked except after a hearing upon reasonable notice to the licensee, with the opportunity to

appear and defend. Nowhere is it implied that the notice must state that it is within the Board's power to revoke. We regard it as a matter of common knowledge that beer and liquor permits are subject to revocation for violations and appellant makes no claim that he was unaware of that fact or that he was prejudiced by the omission.

Next, it is argued that the decision was entered at an executive session of the Board in violation of the Freedom of Information Act. It is said that a deception was practiced upon appellant in that he was told that the meeting was over, whereas the Board knew it would vote as soon as he left. The record does not sustain that contention except for an inference that the hearing on appellant's case was concluded. There was no suggestion that the entire meeting had ended or that appellant was not free to stay if he wished. The chairman said, "the Board will take this under consideration and we will make a decision and you will be notified of our findings." Just when the vote occurred is not shown, nor is it shown that appellant made any request to remain during deliberations or to be present while his case was considered. He may have had that right, but we cannot agree that any deception is shown or that he was not free to remain. It is basic to such proceedings that alleged errors which can be remedied at the time must be raised *as they occur* in order to constitute reversible error. Appellant cannot acquiesce in silence and raise the issue on appeal. *Federal Express Corporation and North American Car Corp.* v. *Skelton*, 265 Ark. 187, 578 S.W. 2d 1 (1979).

Appellant's third point for reversal is that there is no evidence that he consumed alcohol while on duty or that he knew that liquor was on the premises. He takes exception to the conclusion that an owner is "on-duty" at all times he is present on the premises. We can see no purpose in attempting to define when an owner is "on-duty" or "off-duty" while in his own establishment, as there was testimony that appellant and a waitress were drinking behind the bar and that appellant was drunk at times, which the regulation is plainly aimed at. We find substantial evidence to support the finding. On the same point, appellant insists that evidence of "guilty knowledge" is lacking — that the State

must show he knew of the illegal consumption of whiskey. He argues the club was dark and crowded and that only 20 bottles were found among 150 people. This argument has no substance. The interior lighting is within appellant's control and if it is too dark for him to supervise his own establishment, the remedy is obvious. We venture to say that if the appellant had made any effort to determine whether hard liquor was on the premises, it would have been a simple matter for him to do so. There was testimony that when whiskey was seen by the appellant or a waitress, the patrons were told to put their bottles on the floor, which hardly cures the violation. The evidence, given its fullest import, makes it plain that the practice was tolerated, if not encouraged.

Appellant's fourth point is that the revocation order does not contain findings of fact and conclusions of law as required by Ark. Stat. Ann. § 5-710. The claim is without merit, as the orders of both the Director and the Board are fully and carefully drawn, in contrast to the orders found to be deficient in *First State Building and Loan Association* v. *Arkansas Savings and Loan Board*, 257 Ark. 599, 518 S.W. 2d 507 (1975), and *Gordon* v. *Cummings*, 262 Ark. 737, 561 S.W. 2d 285 (1978). In the latter, the Board entered no order except to "grant" the application; in the former no underlying facts were stated. Appellant's primary objection here seems to be that the decision fails to come to grips with his theory that "guilty knowledge" is lacking and the issue of when an owner is "off-duty." The Board's failure to treat those arguments in its conclusions of law is not fatal; it is enough that the order contains thorough findings of fact and citations to the statutes and regulations violated. We find sufficient compliance with § 5-710 to meet the purpose of the statute, i.e., to facilitate judicial review. See Professor Davis, *Administrative Law Treatise*, 1968, Section 16.05.

Appellant next contends that Regulation No. 1.58 of the Alcoholic Beverage Control Board was not followed in connection with the order of the Director. However, the regulation is not abstracted, merely referred to, and we are unable to consider it on the basis of what we find in the brief. *Anderson* v. *Erberich*, 195 Ark. 321, 112 S.W. 2d 634 (1938).

Next, appellant argues that the permit was revoked in "bad faith," amounting to a denial of equal protection and due process, that revocation under these circumstances is "selective prosecution" and, hence, arbitrary and capricious. But these are conclusions — they lack any support in fact. There is no evidence of "selective prosecution," whatever its effect might be. Appellant's right to due process has been observed in all respects and the equal protection clause does not give rise to a defense that because someone else has violated the law appellant can do likewise. We agree that revocation is severe, but it is not for us to make that determination in the place of the Alcoholic Beverage Control Board, to whom supervision of the sale and consumption of alcohol has been entrusted by the legislature. There is substantial evidence that appellant knowingly committed violations of the law, in some respects flagrantly, and the penalty imposed by the Board is within its statutory power. So long as the decision is not arbitrary or capricious, and we conclude that it is not, it is not for us to displace the discretion of the Board with our own. *Gordon* v. *Cummings*, supra.

We are asked to assume from a news article of actions by the Board in other cases, quoted in the brief, that other violations are not treated as severely. But these are merely synopses and tell almost nothing of the facts. Besides, the article is not abstracted, nor can we find it in the record, and we need not consider it. *Anderson* v. *Erberich*, supra. It should be noted that the charges against appellant are not in the category of unwitting infractions, but reflect an arrogant disregard of the law. There is an element of aggravation in deliberately opening on a Sunday with beer and whiskey present in large quantities in the face of a direct warning. He chose to jeopardize the license granted to him by the Board and he cannot complain that the penalty is more severe than he would like it to be — that decision rests with the Board.

Finally, it is argued that there is reversible error in the fact that the Director suspended appellant's permit for 30 days with probation for a year while the Board revoked the permit entirely. Appellant cites *Marshall* v. *State*, 265 Ark.

302, 578 S.W. 2d 32 (1979), wherein we held in a criminal case that when an accused is convicted again after successfully appealing his first conviction, the sentence cannot be enhanced by the trial judge except on affirmative objective matters appearing in the record. We have serious doubts that the rationale of the *Marshall* case is appropriate to an appeal from an administrative tribunal, but that many remain unanswered, as the circuit judge found the evidence to have been more damaging at the Board hearing and we agree. From the testimony of the agents and city police officers appellant's drinking at the club was more than perfunctory violation, but was a serious problem in that he was often drunk, at which times he tended to be belligerent. Agent Dollins said that he had had numerous conversations with appellant regarding his drinking, that he had threatened the life of one individual and that his greatest concern was that appellant would "get too much and hurt somebody bad." Obviously the Board could not have been unaffected by such testimony in view of its obligation to the public. Besides, express authority is given to the Board *on its own motion* to review any action of the Director, including suspension or revocation of licenses. Ark. Stat. Ann. § 48-1314.1 (Repl. 1977). Thus, whether appellant had appealed or not, the Board had the power to review the decision of the Director and make its own determination as to the appropriate penalty.

We are urged to modify the penalty, as was done in *Baxter* v. *Arkansas State Board of Dental Examiners*, 269 Ark. 67, 598 S.W. 2d 412 (1980), where this court reduced the permanent revocation of the license of two dentists to a suspension for 18 months. There we noted that our statutes on dentistry (Ark. Stat. Ann. § 72-560, *et seq.* [Repl. 1979]), provide that "no license once revoked may ever be renewed" and arrived, not without difficulty, at the conclusion that total revocation was excessively harsh. The difference is that the right to practice one's profession or calling is higher than the right to hold a permit to sell intoxicants, which can be withdrawn more readily. What appellant enjoyed was in no sense an individual right, but a special privilege which carries the obligation of strict observance of all rules, regulations and laws affecting the sale and consumption of

alcoholic beverages, which are said to be "absolutely binding" on licensees. Ark. Stat. Ann. § 48-1311 (Repl. 1977). When that privilege is abused, as here, it is within the power of the State to revoke. *Blum* v. *Ford*, 194 Ark. 393, 107 S.W. 2d 340 (1937); *Gordon* v. *Cummings*, supra.

The judgment is affirmed.

Purtle, J., dissents.

John I. Purtle, Justice, dissenting. I cannot agree with the majority in holding that an appeal to the ABC Board from a 30-day suspension may give rise to a permanent revocation of a license. Appellant was never informed that his license was in jeopardy for more than the 30-day suspension. After the hearing was over and the parties were gone the Board decided in a secret session that they would go whole hog and deprive the appellant of his license entirely. Not only was there lack of timely notice there was complete lack of notice in all respects regarding the permanent revocation of appellant's license. I have never seen due process so completely ignored. For good measure the Board violated the Freedom of Information Act and has never redone the matter in open session. As punishment for this violation of the law and failure to give proper notice, also in violation of the law, the majority rewards the Board by upholding this unreasonable and arbitrary action.

Ark. Stat. Ann. § 48-1312 (Repl. 1977) states in part:

... No such license shall be revoked except after a hearing by the Director with reasonable notice to the licensee and an opportunity to appear and defend. ...

The only places which make it more obvious that the appellant was entitled to notice are the Constitutions of the State and Nation. Article 2 § 21 of the Constitution of the State of Arkansas states:

No person shall be taken or imprisoned, or disseized of his estate, freehold, liberties or privileges; or outlawed, or in any manner destroyed or deprived of his life,

liberty or property, except by the judgment of his peers or the law of the land; nor shall any person, under any circumstances, be exiled from the State.

If that's not plain enough, then let's take a peek at the Fourteenth Amendment to the Constitution of the United States, section 1, which reads in part:

... nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Another bit of interesting reading is found in *Goss* v. *Lopez*, 419 U.S. 565 (1975), which states:

... there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.

If one wants to get right down to the law in Arkansas, he might look at the case of *Franklin* v. *State*, 267 Ark. 311, 590 S.W.. 2d 28 (1979), wherein we stated:

Fundamental requirements of due process require the opportunity to be heard at a meaningful time and a meaningful place before a person may be deprived of life, liberty or property.

I would reverse that portions of the lower court judgment which upholds the permanent revocation of appellant's license.