Cephas BREWER *v.* STATE of Arkansas

CA CR 98-935 6 S.W.3d 124

Court of Appeals of Arkansas
Division IV
Opinion delivered December 8, 1999

*Karen Pope Greenaway*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

JOHN B. ROBBINS, Chief Judge. Appellant Cephas Brewer appeals his convictions of two counts of rape, for which he received two concurrent twenty-year prison terms. He does not argue that the evidence was insufficient to convict him for either of these rapes committed against two of his stepgranddaughters. His points on appeal are that the trial court erred in the following ways: (1) admitting the testimony of each girl as to the other's count of rape, in violation of Ark. R. Evid. 404(b), (2) refusing to sever the counts of rape into separate trials, and (3) failing to read a stipulated jury instruction to the jury. We affirm.

A summary of the victims' testimonies is necessary. Appellant was married to the victims' grandmother. One of the victims, V.R., was twenty-two, married, and pregnant with her second child at

the time of trial. She testified that she had experienced numerous episodes of sexual abuse that began when she was approximately ten or eleven years of age and continued until she was sixteen years old. Overlapping during that time, the other victim, A.J., was present and actually lived with her grandmother and her stepgrandfather for a few months. A.J., age twelve at the time of trial, was ten years younger than her older cousin.

V.R. testified that she often went to appellant's home after school, and appellant began to approach her in a sexual manner. This began when she was in the fifth grade, she recalled, which would have been in the mid-1980s. At first, V.R. was touched on her breasts and vagina. Appellant then asked her to give him oral sex, this occurring in the barn after he had asked her to help tend to the chickens. She complied, following appellant's instructions on how to do it. Thereafter, every time she went over to her grandmother's and appellant's house, he had her perform oral sex on him. Appellant had intercourse with V.R. for the first time when she was thirteen, at his home when they were lying down together to take a nap. Appellant told V.R. that he loved her and that he was preparing her for dating and being married. Appellant had intercourse with V.R. more than twenty times between the time that V.R. was thirteen and sixteen. She also testified that appellant showed her a picture of appellant's stepdaughter (V.R.'s aunt) performing oral sex on him in the same manner as appellant had instructed V.R. to do it. Once V.R. was old enough to get a job and a car, she rarely spent any time over at her grandmother's and appellant's house. V.R. stated that she had kept this secret all these years and did not wish to be testifying about it. V.R.'s concern was that she did not want this to happen to her young cousin, A.J.

A. J. testified as well. The sexual abuse perpetrated on A.J. was testified to have occurred between her ages of five and ten, approximately falling in the years 1989 until January 1996. Because A.J.'s parents had separated during these years, A.J., her mother, and her brother lived with appellant for a few months. During the other pertinent time, she went to appellant's house after school, during summer, or anytime that her mother needed a sitter. She often went on camping trips and other outings with her stepgrandfather.

A.J. testified to much of the same behavior that V.R. did. A.J. was fondled and asked to perform oral sex on appellant, beginning

when she was in kindergarten. A.J. gave a detailed account about what appellant required her to do during these episodes. A.J. also testified that appellant brought a jar of Vaseline that he called "slickum" on camping trips; that appellant would make sure that A.J.'s brother was asleep in another tent; that appellant would put "slickum" on her vagina; and that he would try to enter her vagina but could not. This was not an isolated event. Appellant taught A.J. how to "french" kiss him. Appellant also showed A.J. pornographic materials to show her how to position herself during sex with him. He told A.J. that he loved her and that she was "lucky" to have this happening to her.

The victims' episodes of sexual abuse coincided on one camping trip. V.R. testified while the three of them were laying down to sleep together in the back of appellant's truck, appellant put himself between the girls, had sex with V.R., and then had A.J. perform oral sex on him. Afterward, they all slept together in the bed of his truck.

### 404(b) Evidence

 Appellant argues that it was error to allow each girl to testify about their experiences because it was improper for the jury to use this testimony as to the other's count of rape. Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may however, be admissible for other purposes, such as proof of notice, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

An exception has been carved out, commonly known as the "pedophile exception," which provides:

> When the alleged crime is child abuse or incest, we have approved allowing evidence of similar acts with the same or other children in the same household when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship.

*Taylor v. State*, 334 Ark. 339, 349, 974 S.W.2d 454, 460 (1998); Mosley*v. State*, 325 Ark. 469, 929 S.W.2d 693 (1996); *see also*

*Munson v. State*, 331 Ark. 41, 959 S.W.2d 391 (1998); *Greenlee v. State*, 318 Ark. 191, 884 S.W.2d 947 (1994). It is also admissible to show the familiarity of the parties and antecedent conduct toward one another and to corroborate the testimony of the victim. *Free v. State*, 293 Ark. 65, 732 S.W.2d 452 (1987); *Hyatt v. State*, 63 Ark. App. 114, 975 S.W.2d 433 (1998). Such evidence helps to show the depraved instinct of the accused. *Williams v. State*, 103 Ark. 70, 146 S.W. 471 (1912). The admission or rejection of evidence under Rule 404(b) is left to the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Munson, supra.* We find no abuse of discretion in this case.

■ Appellant concedes that the forced oral sex and sexual intercourse are acts similar in nature. Appellant argues that V.R. did not live in the same household and therefore does not meet a requirement of the pedophile exception. We disagree. This case presents the classic situation for application of the pedophile exception. These girls were in the same relationship to the appellant; both were stepgranddaughters. While A.J. did in fact live in appellant's household for a period of time, the majority of contact between appellant and these girls was due to their positions as stepgranddaughters and the frequency of their visits to his home. The sexual abuse always occurred when the girls were in his care or under his authority. This is sufficient to trigger the pedophile exception. *See Hernandez v. State*, 331 Ark. 301, 962 S.W.2d 756 (1998) (friend of daughter/victim allowed to testify that she too was abused when spending the night at appellant's house); *Greenlee, supra* (evidence permitted in case of a rape of a five-year-old girl in babysitter's care under this exception when prior sexual abuses occurred with all young boys while appellant babysat them). While appellant asserts that there was no intimate relationship with these girls, we could not disagree more. The nature of their familial relationship and the extensive time spent with each of them belies this assertion.

■ Appellant displayed pornographic materials to both girls. To the extent that appellant argues that the testimony regarding pornographic material should not have been permitted, he is in error. Just because some of the acts did not rise to the level of rape did not render evidence of those acts inadmissible. *See Hyatt* and *Greenlee, supra.*

■ Appellant argues that we should adopt a standard stated in an Arizona case requiring reliable medical expert testimony to demonstrate a continuing emotional propensity to commit the act charged in pedophile cases. We decline to do so and could not do so. We must follow the precedent set by our supreme court, and we are powerless to overrule its decisions. *Kearse v. State*, 64 Ark. App. 144, 986 S.W.2d 423 (1999).

■ Accordingly, we hold that in this case the trial court did not err in concluding that the probative value of the evidence outweighed the danger of unfair prejudice because the evidence involves similar crimes against children who were in appellant's care or household at the time that the incidents occurred. *See e.g. Taylor v. State*, 334 Ark. 339, 974 S.W.2d 454 (1998).

### Motion to Sever Trials

■ Appellant argues that the trial court erred in denying his motion to sever the counts of rape for separate trials. We disagree. Arkansas Rule of Criminal Procedure 22.1 provides that if an appellant's pretrial motion for severance is denied, he must renew the motion before or at the close of all the evidence. If there is no renewal, then the argument is waived on appeal. The reasoning is that the trial court is in a far better position to know after the evidence has been presented whether the charges should have been severed due to their being joined solely because they were of the same or similar nature and not part of a single scheme or plan. *Wynn v. State*, 316 Ark. 414, 871 S.W.2d 593 (1994). Here, appellant's pretrial motion to sever was denied; he never renewed the motion. The fact that appellant mentioned a motion to sever in the motion for new trial does not suffice to renew the motion, especially when the motion for new trial, filed before judgment was entered, was ineffective. *See Brown v. State*, 333 Ark. 698, 970 S.W.2d 287 (1998).

### Jury Instruction

■ Appellant argues that the trial court erred in failing to read Arkansas Model Jury Instruction—Criminal 203-A, which reads:

> Members of the jury, you are instructed that evidence of other alleged crimes, wrongs or acts of [defendant] may not be considered by you to prove the character of [defendant] in order to show that he acted in conformity therewith. This evidence is not to be considered to establish a particular trait of character that he may have, nor is it to be considered to show that he acted similarly or accordingly on the day of the incident. This evidence is merely offered as evidence of [motive] [opportunity] [intent] [preparation] [plan] [knowledge] [identity] [absence of mistake or accident] [specify other]. Whether any other alleged crimes, wrongs, or acts have been committed is for you to determine.

However, there is no evidence that appellant objected to the omission of the instruction when the instructions were read to the jury or at the conclusion of their reading. A party who does not object at the first opportunity, thereby giving the trial court an opportunity to correct the alleged error, waives the argument on appeal. *Marts v. State*, 332 Ark. 628, 968 S.W.2d 41 (1998). Appellant attempted to raise this issue in his motion for new trial, but as has been discussed, that motion was ineffective because it was filed prior to the judgment. *Brown, supra*. Appellant's attempt to raise the issue of ineffective assistance of counsel with regard to this jury instruction is likewise barred because it is raised for the first time on appeal. *Marts, supra*.

For the foregoing reasons, we affirm.

JENNINGS and STROUD, JJ., agree.