David Edward TOWNSEND *v.* STATE of Arkansas

CA CR 98-1228 6 S.W.3d 133

Court of Appeals of Arkansas
Divisions IV and I
Opinion delivered December 15, 1999

*Charles M. Duell*, Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *Kent G. Holt*,. Ass't Att'y Gen., for appellee.

JOHN E. JENNINGS, Judge. David Edward Townsend was charged with the offenses of manufacturing a controlled substance (methamphetamine), possession of drug paraphernalia, and aggravated assault. Pursuant to Rule 24.3 of the Arkansas Rules of Criminal Procedure, he entered a negotiated plea of guilty to the charge of possession of drug paraphernalia, preserving the right to appeal the denial of his motion to suppress evidence, and was sentenced to two years probation. On appeal, appellant contends that the nighttime search was not justified, that there was no probable cause for the issuance of the warrant, and that the good-faith exception does not apply. We affirm on the first two points raised and do not reach the third.

This case turns on the sufficiency of an affidavit submitted to support the issuance of a search warrant. The affidavit is lengthy, consisting of four pages, but the information it contains can be fairly summarized as follows. Detective Dave Mitchell of the 19th Judicial District Drug Task Force applied for the search warrant on May 20, 1997. He stated that a female had been arrested at 2:00 a.m. the previous morning and that a hypodermic syringe had been found on her person. At the police department, she offered to volunteer information concerning illegal drug activity taking place at a residence in Bentonville. The informant stated that a Charles Meadors was manufacturing methamphetamine in the garage of the residence, identified as #7 McIntosh, but that Meadors conducted sales of the drug elsewhere at the Dairy Queen parking lot. The informant further stated that Meadors would dispose of the leftover materials used in the manufacturing process at a dumping site on Rainbow Road located on the left side of a bridge that was under construction. The informant described Meadors's vehicle as being a gray or primered color Camaro and said that a sixties model Ford Mustang would be sitting on the left side of the house.

Detective Mitchell received this information at 9:30 a.m. on May 19. He was unable to locate the informant, so he proceeded to the construction site on Rainbow Road. While searching the left side of the bridge, a road department employee told Mitchell that he had just bulldozed an apparent burn pile. Mitchell inspected the area of the burn pile and found a melted Equate-brand antihistamine bottle, two coffee filters with possible residue, melted plastic lye bottles, two one-gallon camp fuel cans, and several melted plastic baggies. Mitchell stated that, based on his experience and training, these items were commonly used and were necessary in the process of manufacturing methamphetamine.

Detective Mitchell then traveled to the Meadors residence, accompanied by a police officer who provided further information disclosed by the informant. They observed a gray Camaro in the driveway and a blue Mustang beside the house, which was as described by the informant.

Mitchell placed phone calls to the informant's parents and her boyfriend and gave them his pager number. He was later contacted by the informant and an interview was arranged for 9:00 p.m. at the police station. During the interview, the informant stated that

Meadors would produce methamphetamine in the residence on a weekly basis. She advised that, within the last week, Meadors had produced a large milk jug of methamphetamine, which was kept in the closet of Meadors's bedroom. The informant told Mitchell that she had once been present during the entire manufacturing process. She described the process of how Equate tablets were broken down into pure ephedrine, to which acetone was added and placed in cookware on the stove. She observed the addition of iodine crystals to the mixture and saw several other chemicals bearing skull and crossbones on the label. The informant also observed bottles of lye and mason jars equipped with coffee filters on top that were used to strain the mixture. She said that she was present when trash was dumped and burned at the site on Rainbow Road. She was also present when Meadors instructed another man to obtain iodine crystals, which she later learned had been stolen.

During the interview, the informant drew a detailed map of the residence and surrounding premises, showing the location of the methamphetamine lab. She admitted that on occasion she had purchased methamphetamine at the residence. The informant also advised that there were several handguns of unknown caliber in the residence and that a vicious dog was kept in the back yard. She had been in the residence as recently as May 18, when she observed marijuana, pipes used for smoking marijuana, and a set of scales containing a white powdery substance.

The residence was said to be located at the end of a *cul-de-sac*. The house was further described as having three windows on the front side.

Mitchell asked for permission to execute the warrant at night because the location of the residence was such that officers approaching the residence could be easily observed, because there were firearms and a vicious dog at the residence, and because any methamphetamine located at the residence could be disposed of easily.

▊ We first address appellant's contention that the affidavit failed to set forth sufficient facts for the execution of the warrant at night. Rule 13.2(c) provides that, before a nighttime warrant is issued, the issuing judicial officer must have reasonable cause to believe that:

(i) the place to be searched is difficult of speedy access; or

(ii) the objects to be seized are in danger of imminent removal; or

(iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy.

The use of the word "or" makes it clear that the existence of any one of these factors may justify a nighttime search. *Owens v. State*, 325 Ark. 110, 926 S.W.2d 650 (1996).

■ In this instance, the issuing magistrate authorized the execution of the warrant at night based on all three factors mentioned in Rule 13.2(c), and the trial court upheld the magistrate's determination in denying the motion to suppress. In reviewing a trial court's ruling on a motion to suppress because of an alleged insufficiency of the affidavit, we make an independent determination based upon the totality of the circumstances and reverse the trial court's ruling only if it is clearly against the preponderance of the evidence. *]Coleman v. State,* 308 Ark. 631, 826 S.W.2d 273 (1992).

■ It has been consistently held that the affidavit must set out facts showing reasonable cause to believe that circumstances exist which justify a nighttime search. *Hall v. State,* 302 Ark. 341, 789 S.W.2d 456 (1990). Conclusory language that is unsupported by facts is not sufficient. *Richardson v. State,* 314 Ark. 512, 863 S.W.2d 572 (1993). For instance, in *Garner v. State,* 307 Ark. 353, 820 S.W.2d 446 (1991), check marks had been placed beside conclusory statements that mirrored the language found in Rule 13.2. Because the affidavit contained no facts to support those conclusions, the supreme court reversed the denial of the motion to suppress. The lack of a factual basis was also evident in *Hall v. State,* 302 Ark. 341, 789 S.W.2d 456 (1990). There, the affidavit recited only that illegal drugs were present in the appellant's residence and that marijuana had been purchased there within the past seventy-two hours. The court considered those facts insufficient to justify the execution of the warrant at night. More recently in *Fouse v. State,* 337 Ark. 13, 989 S.W.2d 146 (1999), the supreme court determined that neither the strong odor of ether coming from the residence, the affiant's fear of an explosion, nor his statement that the incriminating evidence might be moved or destroyed provided reasonable cause to believe that the objects to be seized were in danger of imminent removal.

The court considered the affiant's assertions to be conclusory in nature and lacking in factual support.

On the other hand, nighttime searches have been sustained when there are underlying facts to support a finding of exigent circumstances. In *Owens v. State*, 325 Ark. 110, 926 S.W.2d 650 (1996), the affidavit contained information that the road leading to the residence was muddy and filled with potholes and that it was situated such that the officers would have to approach the residence on foot for a distance of 250 yards. It was also stated that the occupants had been using methamphetamine for six months and that they feared being watched and approached by law enforcement authorities. Further, it was suspected that firearms were present in the house based on a recent report of a concerned citizen who had heard automatic gunfire coming from the residence. In addition, the affidavit recited that methamphetamine was sold at the house throughout the night and that removal of the contraband by distribution was likely. In upholding the nighttime search, the supreme court held that the affidavit "presented specific data and fact-based conclusions regarding the difficulty of access, the possible removal of evidence, and the dangers presented to the officers."

In *Langford v. State*, 332 Ark. 54, 962 S.W.2d 358 (1998), it was stated in the affidavit that the drugs in the residence were packaged in a manner that their destruction or removal could be easily accomplished; that the appellant had threatened an informant with a semi-automatic weapon within the past week and was thus believed to be armed and dangerous, making the element of surprise inherent in a nighttime search essential to the safety of the officers; that the appellant would be leaving the residence the next morning, thus giving rise to the belief that the drugs would be removed; and that the residence was located on a hill overlooking the only road that provided access to the property. Based on this information, the court concluded that there was a sufficient factual basis for a nighttime search.

Also, in *Coleman v. State*, 308 Ark. 631, 826 S.W.2d 273 (1992), it was stated in the affidavit that an informant had purchased cocaine contained in a clear plastic bag the same night that the application for the warrant was made and that the drugs located in the house were packaged and maintained in a manner that their destruction or removal could be easily accomplished. There, it was

held that there was reasonable cause to believe that the appellant had additional drugs in the residence that were packaged so that they could be easily destroyed or removed. In *Coleman*, the court also discussed the affiant's use of language generated by a word processor's memory bank that the residence was "so situated that the approach of the officers serving the warrant can be readily detected." The court likened the use of this computer-generated phrase to the check-marked language it deemed insufficient in *Garner v. State, supra*. The court commented, however, that it was regrettable that the affiant had omitted his knowledge of the residence being located on a *cul-de-sac* with only one way of entering, that the appellant watched for cars approaching the house, and that the appellant had a gun.

■ In the case at bar, the issuing magistrate knew that the house was located on a *cul-de-sac*, indicating that there was only one way for the police officers to approach the house. The magistrate also knew that there were firearms and a vicious dog present at the house. In addition, the affidavit disclosed that the methamphetamine was being kept in a single container, that leftover materials used in the manufacturing process were disposed of and burned at a distant location, and that sales of the drug were conducted away from the home. The affidavit does not rest on mere conclusions. There are facts which reveal the difficulty of access, the potential for the removal of evidence, and the dangers the officers would face, which gave cause for legitimate concern for the officers' safety. We hold that there was a sufficient factual basis to support the execution of a nighttime search.

■ Appellant also contends that the trial court erred in concluding that the good-faith exception found in *United States v. Leon* would apply even if the nighttime search was not justified. In *Leon*, 468 U.S. 897 (1984), the Court held that the Fourth Amendment exclusionary rule should not be applied to exclude evidence obtained by police officers acting in reasonable reliance on a search warrant that is ultimately found to be invalid. Because we find no defect in the warrant, there is no reason for us to discuss, hypothetically, whether the good-faith exception would have applied.

Appellant next argues that there was no probable cause for the issuance of the warrant. He contends that the information known

to the officer was conclusory and that there was no corroboration of the material allegations made by the informant. We disagree.

 In deciding whether to issue a warrant, the magistrate should make a practical, commonsense determination based on the totality of the circumstances set forth in the affidavit. *Thompson v. State*, 280 Ark. 265, 658 S.W.2d 350 (1983). It is the duty of the reviewing court to simply ensure that the magistrate had a substantial basis for concluding that probable cause existed to issue the warrant. *Brannon v. State*, 26 Ark. App. 149, 761 S.W.2d 947 (1988). The information given by the informant was specific and revealed the details of an ongoing methamphetamine manufacturing operation. The information she provided was based on her own personal observations of recent criminal activity; she made statements that tended to incriminate herself; and portions of her account were independently verified by Officer Mitchell. The trial court's decision to deny the motion to suppress on this ground is not clearly erroneous. *See Owens v. State*, 325 Ark. 110, 926 S.W.2d 650 (1996).

Affirmed.

ROBBINS, C.J., and NEAL, and CRABTREE, JJ., agree.

BIRD, J., concurs.

GRIFFEN, J., dissents.

SAM BIRD, Judge, concurring. While I agree with the majority opinion that this case should be affirmed, I write separately because I do not agree that the affidavit was sufficiently specific to support the State's request for a nighttime search, but rather I would affirm because the good-faith exception applies in this case.

The majority opinion notes that the affidavit for the search warrant was quite lengthy. However, the part of the affidavit seeking to justify a nighttime search warrant was very brief, and read as follows:

> Affiant hereby requests that he be allowed to execute this warrant at night, because the location of the residence is such that officers approaching the residence could be easily observed, and there are firearms and a vicious dog located at the residence.

Furthermore, any methamphetamine located at the residence could be easily disposed of.

I do not believe that that language is sufficient to establish the existence of exigent circumstances that justify a nighttime search. Nighttime search warrants have been invalidated on several occasions by our supreme court when the facts supporting one or more exigent circumstances have been found wanting. *See Fouse v. State*, 337 Ark. 13, 989 S.W.2d 146 (1999) (citing *Richardson v. State*, 314 Ark. 512, 863 S.W.2d 572 (1993); *Garner v. State*, 307 Ark. 353, 820 S.W.2d 446 (1991); *State v. Martinez*, 306 Ark. 353, 811 S.W.2d 319 (1991); *Hall v. State*, 302 Ark. 341, 789 S.W.2d 456 (1990); *State v. Broadway*, 269 Ark. 215, 599 S.W.2d 721 (1980)). In *Fouse v. State*, *supra*, the supreme court discussed the well-established rule that conclusory language in the affidavit submitted to support a search warrant, unsupported by facts, is insufficient to justify a nighttime search. In *Fouse*, the affidavit submitted read, in part:

> It has been my experience and I know that the process of manufacturing methamphetamine takes approximately four hours and that the chemicals used to manufacture methamphetamine are volatile and subject to explode or at the least cause a fire and can be a danger to surrounding houses in a residential setting such as this. There is also an emminent (sic) danger that the items and hardware used to manufacture methamphetamine may be moved or destroyed and the methamphetamine product may be transported and/or sold.

337 Ark. at 20, 989 S.W.2d at 149. The court held that the affidavit was conclusory, and reversed the trial court's refusal to suppress evidence resulting from a nighttime search.

In *State v. Broadway*, the court stated:

> An affidavit should speak in factual and not mere conclusory language. It is the function of the judicial officer, before whom the proceedings are held, to make an independent and neutral determination based upon facts, not conclusions, justifying an intrusion into one's home.

269 Ark. at 218, 599 S.W.2d at 723.

In the case at bar, the affidavit simply states that the location of the residence is such that the approaching officers could be easily observed, that there are firearms and a vicious dog at the residence,

and that the methamphetamine could be easily disposed. I suspect that the affidavit's description of appellant's residence would apply to a large number, if not an overwhelming majority, of the residences in this state, and that the very nature of methamphetamine renders it easily disposable, wherever it may be located. The affidavit does no more than make assertions, unsupported by facts. In light of *Fouse v. State*, and *Garner v. State, supra*, it is hard for me to conclude that the affidavit relied on in the case at bar is sufficiently specific to justify execution of the warrant at night.

However, I would affirm this case based upon the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984), where it was held that an objective good-faith reliance by a police officer on a facially valid search warrant will avoid the application of the exclusionary rule in the event that the magistrate's assessment of probable cause is found to be in error. *See United States v. Leon, supra; Langley v. State*, 66 Ark. App. 311, 990 S.W.2d 575 (1999). The test under *Leon* is not whether the police officers executing the search warrant subjectively believed that they were complying with the law. Rather, the test is whether a reasonably well-trained police officer would believe that probable cause exists for a nighttime search. *See Fouse v. State, supra*. In applying the good-faith exception, our supreme court has stated that the objective standard is not met when a police officer only presents suspicions regarding removal and the municipal judge only repeats the boilerplate language. *Fouse v. State, supra*. However, in the case at bar, there is nothing in the record to suggest that the officers in this case acted other than in an objectively reasonable manner. Furthermore, there is nothing in the record to suggest that they had any doubts about the technical sufficiency of the search warrant. *State v. Blevins*, 304 Ark. 388, 802 S.W.2d 465 (1991). The affidavit was four pages long, setting forth testimony from various informants regarding activities in the appellant's house. In addition, Detective Mitchell had traveled to the residence accompanied by a police officer who provided additional information disclosed by an informant. Furthermore, the informant had described how the persons in the home would dispose of the methamphetamine. Under these circumstances, I would conclude that a reasonably well-trained police officer would have believed that probable cause existed to conduct a nighttime search, notwithstanding the lack of specificity in the affidavit.

Therefore, while I do not believe that the facts set forth in the affidavit are sufficiently specific for a nighttime search, I concur that this case should be affirmed based upon the good-faith exception.

WENDELL L. GRIFFEN, Judge, dissenting. I would reverse and remand appellant's conviction following his conditional plea of guilty to the charge of possession of drug paraphernalia and his sentence (two years of supervised probation and $500 fine). Contrary to the majority, I consider reversal mandated because Arkansas Rule of Criminal Procedure 13.2 (c) details that a search warrant may only be executed at night as follows:

> Upon a finding by the issuing judicial officer of reasonable cause to believe that: (i) the place to be searched is difficult of speedy access; or (ii) the objects to be seized are in danger of imminent removal; or (iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy . . . .

The established law in Arkansas is that a search warrant shall be executed between the hours of 6 o'clock a.m. and 8 o'clock p.m., and the three exceptions to this restriction are stated in the aforementioned rule. Ark. R. Crim. P. 13.2(c). A factual basis must be stated in the affidavit, or in sworn testimony, before a nighttime search warrant may be validly issued. *Coleman v. State*, 308 Ark. 631, 826 S.W.2d 273 (1992). Where there is no factual basis in the affidavit to support a nighttime search, but the affidavit instead speaks in mere conclusory language, the Arkansas Supreme Court has affirmed a trial judge's decision to suppress evidence seized pursuant to a nighttime search. *State v. Broadway*, 269 Ark. 215, 599 S.W.2d 721 (1980). In *State v. Martinez*, 306 Ark. 353, 356, 811 S.W.2d 319, 321 (1991), our supreme court also affirmed a trial judge's decision to suppress evidence seized in a nighttime search where a warrant merely recited (i) that arrangements had been made to purchase a controlled substance from the accused; (ii) that it was believed that the accused stored the controlled substance at his residence; (iii) and that the proposed sale was expected to occur at his residence. In doing so, the supreme court mentioned that the affidavit submitted to the issuing magistrate was silent with respect to anything regarding reasonable cause to believe that the controlled substance (marijuana in that case) would be destroyed or removed before the next morning. *Id.*

These decisions dictate reversal and remand of appellant's conviction and sentence. The affidavit for search warrant submitted to Bentonville Municipal Judge John Skaggs by Detective Dave Mitchell of the 19th Judicial District Drug Task Force simply affirmed the following regarding the reasons for requesting authorization to execute the search warrant at night:

> Affiant hereby requests that he be allowed to execute this warrant at night, because the location of the residence is such that officers approaching the residence could be easily observed, and there are firearms and a vicious dog located at the residence. Furthermore, any methamphetamine located at the residence could be easily disposed of.

This language is as conclusory as that held unacceptable in *Martinez, supra.*

Although the briefs mention that the residence to be searched was situated in a *cul-de-sac*, Mitchell's affidavit did not reference that factor as a reason for needing to execute the warrant at nighttime. Mere presence of a dog, vicious or docile, should not determine whether a search warrant can be executed at nighttime. And given that there are many residences throughout Arkansas where firearms can be found — either with or without the presence of dogs and whether located on a *cul-de-sac* or not — it does not follow that the presence of firearms makes a nighttime search necessary to protect the safety of the searching officers or to ensure that the search will be successful. The better logic is that people are more likely to fetch their guns when confronted in their homes at night by uninvited others than during the daytime, no matter where they live, whether they are law-abiding or law-breakers, or whether they have dogs or not.