Richard Wayne MCCORMICK v. STATE of Arkansas

CA CR 00-246 48 S.W.3d 549

Court of Appeals of Arkansas
Divisions I, II, and III
Opinion delivered June 27, 2001

*John Wesley Hall,* for appellant.

*Mark Pryor,* Att'y Gen., by: *C. Joseph Cordi, Jr.,* Ass't Att'y Gen., for appellee.

OLLY NEAL, Judge. Richard Wayne McCormick entered a conditional plea of guilty to conspiracy to manufacture methamphetamine and simultaneous possession of drugs and fire-arms after a Washington County Circuit Court denied his motion to suppress. He attempted to reserve his right to appeal pursuant to Ark. R. Crim. P. 24.3, and argues on appeal that 1) this court should adopt a *de novo* standard of review for search and seizure cases; 2) the totality of circumstances in this case fail to adequately show the informant's basis of knowledge or reliability; and 3) the affidavit failed to demonstrate reasonable cause for a nighttime search. In an unpublished opinion, handed down on February 14, 2001, we held that McCormick failed to strictly comply with the requirements of Rule 24.3(b) of the Arkansas Rules of Criminal Procedure and dismissed his appeal for lack of jurisdiction. On rehearing, McCormick argues that the court of appeals erred in dismissing his appeal. We now grant rehearing, and affirm on the merits in a substituted opinion.

*Rehearing Facts*

On October 16, 1999, McCormick entered a conditional plea that was set aside because of a disagreement in the recommendation. On January 12, 2000, he entered a second conditional plea to the charges. The plea was accepted by the trial court and appellant received a sentence of 300 months in the Arkansas Department of Correction for the conspiracy charge with sixty months suspended, and 360 months of suspended sentence on the simultaneous possession charge.

At the time of the second entry, the trial court asked McCormick, "Do you understand the effect of a guilty plea if I accept it? One, there's no appeal. Second, you cannot withdraw your plea at a later date and be given a trial." McCormick responded, "Yes, sir." The trial court also told appellant, "in addition you waive any objection to errors in this proceeding, *with the exception of the suppression issue which you're preserving under Rule 24.3*, [emphasis added] I believe." Following appellant's counsel's affirmative answer, the trial court asked the prosecutor:

> Now it's my understanding that the defendant will appeal my decision on the suppression issue. What is the state recommending in terms of an appeal bond?

The prosecutor made a recommendation.

The prosecutor's only involvement in the proceeding appears to have been her recommendation of a sentence and her opinion on whether to allow an appeal bond. McCormick then filed a notice of appeal that reflected that he was appealing pursuant to Rule 24.3.

We reasoned, in our February 14, 2001 opinion, that although the trial court observed that it understood appellant would appeal its ruling on the motion to suppress, the record does not reveal that the prosecutor made any comments that demonstrated her consent to the conditional plea, and consequently, because we could not find that McCormick "strictly complied" with the requirements of Rule 24.3(b), we dismissed the appeal for lack of jurisdiction.

*Rehearing Argument*

McCormick argues that the prosecutor's silence must be taken as assent to the statement. Citing *Holifield v. Arkansas Alcoholic Beverage Control Bd.*, 273 Ark. 305, 619 S.W.2d 621 (1981), he analogizes the prosecutor's silence to Arkansas's invited-error doctrine where it is settled law that a party cannot acquiesce in silence and then raise an issue on appeal, and asserts that it is error for this court to raise this argument *sua sponte* on appeal where the State would be barred from raising it. McCormick contends that the court of appeals decision amounts to the imposition of new conditions for making a conditional guilty plea. He argues that the creation of this new procedural default is a "classic violation of due process of law," a violation of equal protection, and a deprivation of his Sixth Amendment right to be heard and assisted by counsel. We agree that to require more of the prosecutor to demonstrate consent amounts to imposing new conditions for making a "conditional guilty plea."

■ Rule 24.3(b) of the Arkansas Rules of Criminal Procedure reads as follows:

> With the approval of the court and the consent of the prosecuting attorney, a defendant may enter a conditional plea of guilty or *nolo contendre* [*contendere*], reserving in writing the right, on appeal from the judgment, to review of an adverse determination of a pretrial motion to suppress evidence. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.

When Rule 24.3(b) is not strictly complied with, this court lacks jurisdiction to hear an appeal, even when the record reveals that the trial court attempted to enter a conditional plea. *See Ray v. State,* 328 Ark. 176, 178, 941 S.W.2d 427, 428 (1997). It has previously been held that Rule 24.3(b) requires a contemporaneous writing by the defendant, as well as proof that the conditional plea was approved by the trial court with the consent of the prosecuting attorney. *See Barnett v. State,* 336 Ark. 165, 984 S.W.2d 444 (1999).

■ Rule 24.3 does not specify the manner in which the State is to manifest its consent to the conditional guilty plea, so being present, contesting the objectionable aspects of the disposition of the case, and allowing the plea to be entered as a "negotiated plea of guilty" should be sufficient to preserve the suppression issue for appeal. Obviously, for a "negotiated" plea to exist it requires negotiation, and the only other interested party is the State. In

contract law, manifestation of assent may be made by spoken words or by conduct. *See Childs v. Adams*, 322 Ark. 424, 909 S.W.2d 641 (1995); *see also ERC Mortgage Group, Inc. v. Luper*, 32 Ark. App. 19, 795 S.W.2d 362 (1990) (citing Restatement (Second) of Contracts § 19 (1981)). Here assent was manifested by the prosecutor showing up in court and acquiescing to the entry of the negotiated plea agreement. To hold otherwise would be to give the State the benefit of the bargain while simultaneously relieving it of its obligation to consent. In dismissing this appeal we engaged in improper interpretation of Rule 24.3, liberally construing it *against* the appellant, rather than strictly construing it in favor of him. Accordingly, we grant rehearing and decide this case on the merits.

*Suppression Facts*

On October 14, 1999, McCormick moved to suppress evidence seized pursuant to a nighttime search warrant that was executed on April 30, 1999. He alleged that the warrant was obtained without probable cause.

At the suppression hearing, Detective Danny Halfacre, a nineteen-year veteran of the Washington County Sheriff's Department who was currently assigned as a DEA Drug Task Force officer, testified that on April 26, 1999, he received information from Lyle Johnson, an employee of the Spectrum Chemical Company of Fort Lauderdale, Florida. According to Det. Halfacre, Johnson had been indicted for drug offenses and was working with the DEA to obtain a lighter sentence. Johnson informed the DEA that Richard Osburn of Fayetteville had purchased 500 grams of red phosphorus. Det. Halfacre stated that the amount ordered was unusual; typical orders are either for smaller or much larger amounts. He also found that the order was being sent to a residential address in the name of a business that did not exist at that location. Det. Halfacre testified that while red phosphorus had some legitimate uses in the manufacture of flares, fireworks, or explosive devices, it was also commonly used as a catalyst in the manufacture of methamphetamine. Det. Halfacre learned from Osburn that he had ordered the chemical for McCormick, who was Osburn's methamphetamine supplier. Osburn told him that he had regularly purchased methamphetamine from McCormick over the previous six months, that McCormick had numerous firearms in his residence, and that he had installed surveillance cameras on three sides of McCormick's residence. Based on the information that they obtained from Osburn, Det. Halfacre stated that they sought to

find methamphetamine, a lab or lab components, firearms, records, and formulas, all items commonly associated with manufacturing and delivery of methamphetamine. According to Det. Halfacre, he presented the warrant to Judge Reynolds at approximately 9:30 p.m., the judge signed it after putting him under oath, and the DEA office executed the warrant approximately two hours later. The affidavit was entered into evidence as an exhibit, as was the return with inventory. Among the items seized was a meth lab, various drug recipes, a night-vision device, guns, and ammunition, including so-called "cop-killer" bullets.

On cross-examination, Det. Halfacre stated that when he made contact with Osburn, Osburn was "panic stricken." The detective admitted that Osburn initially insisted that he had ordered the red phosphorus to clean out drains in the apartment complex where he worked as a maintenance man, but "gradually," over the course of the hour that Det. Halfacre spent with him, abandoned that story and admitted that he was procuring the chemicals for McCormick. Det. Halfacre also admitted that he threatened Osburn with jail, but told him that if he cooperated, he would not be arrested and he would ask the prosecutor not to prosecute him. According to Det. Halfacre, Osburn was not an informant, but rather, an unindicted co-conspirator. Det. Halfacre specifically testified that he put in the affidavit the fact that Osburn told him that he had purchased methamphetamine from McCormick the day before.

Judge Ray A. Reynolds testified that he was not concerned about the reliability of Osburn's statements in the affidavit because he admitted to criminal activity, which was a statement against penal interest. He also stated that Det. Halfacre had confirmed the delivery of red phosphorus. Judge Reynolds stated that the affiant, Det. Halfacre, was well known by him, so his credibility was not an issue. He stated, however, that it would be important to him to know whether or not Osburn had made false statements to police, and it would be "nice" to know if Osburn was under the influence of drugs.

*Suppression Argument*

ARGUMENT I: THE ARKANSAS APPELLATE COURTS APPLY THE WRONG STANDARD OF REVIEW TO SEARCH AND SEIZURE ISSUES. THE COURT MUST REVIEW SEARCH AND SEIZURE QUESTIONS *DE NOVO* ON THE HISTORICAL FACTS UNDER THE FOURTH AMENDMENT

McCormick argues that the current standard of review is confusing and incorrectly applied. He contends that the required standard of review is *de novo* with independent review without virtual deference to the trial court's determination. He asserts that instituting *de novo* review in Arkansas search and seizure cases will clarify the law. This argument is without merit.

■ ■ First, it would necessarily require overruling Arkansas Supreme Court precedent, which the court of appeals is powerless to do. *See Brewer v. State*, 68 Ark. App. 216, 6 S.W.3d 124 (1999). Second, a virtually identical argument was placed before the supreme court last year when this court certified *Stephens v. State*, 342 Ark. 151, 28 S.W.3d 260 (2000), to the supreme court to consider this issue. Although the supreme court found the issue not to be squarely before it because it was raised for the first time in a reply brief, in *dicta*, it nonetheless stated that it did not believe that the current standard of review failed to comport with the U.S. Supreme Court's holding in *Ornelas v. United States*, 517 U.S. 690 (1996). The supreme court declined a similar invitation to change the standard of review in *State v. Howard*, 341 Ark. 640, 19 S.W.3d 4 (2000), which they inexplicably did not reference in *Stephens*. We affirm on point I.

ARGUMENT II: THE TRIAL COURT ERRED IN FAILING TO GRANT THE MOTION TO SUPPRESS BASED UPON THE FACT THAT THE TOTALITY OF CIRCUMSTANCES REFLECTED IN THE AFFIDAVIT FOR THE SEARCH WARRANT IN THIS CASE DID NOT ADEQUATELY SHOW THE INFORMANT'S BASIS OF KNOWLEDGE OR RELIABILITY (VERACITY) OR THAT WHAT WAS DESIRED WOULD BE FOUND

McCormick argues that under *Illinois v. Gates*, 462 U.S. 213 (1983), search warrants based on informant hearsay must demonstrate facts under the totality of the circumstances test showing both the informant's basis for knowing what he claims and why the information is believable. McCormick criticizes the affidavit as containing "self-serving, and therefore, essentially meaningless, comments about what the affiant knows about drug dealers, their habits, banking practices, and possession of records, money, firearms, etc., based on his experience which was regurgitated off a computer hard drive where the officer uses it again and again." Citing Ark. R. Crim. P. 13.1(b), McCormick argues that the affidavit fails to satisfy the requirements of the Fourth Amendment because it does nothing to "set forth particular facts bearing on the informant's reliability and...[to] disclose, as far as practicable, the means by which the information was obtained" or show when he acquired some of the information. McCormick asserts that the mere fact that Osburn was

identified did not make him credible. He also contends that Osburn should not be deemed to be believable because he had a motive to falsify to save him from prison, had made false statements to police, and never "actually" made a true statement against penal interest. McCormick also claims that there was no stated "basis of knowledge" for most of the information except for the fact that Osburn claimed he delivered the red phosphorus and bought methamphetamine from McCormick for the last six months. Finally, McCormick asserts that Judge Reynolds was merely a "rubber stamp for the police." These arguments are without merit.

■ ■ In reviewing a case involving the suppression of evidence, we make an independent determination based upon the totality of the circumstances and reverse only if the ruling is clearly erroneous or against the preponderance of the evidence. *Fouse v. State*, 337 Ark. 13, 989 S.W.2d 146 (1999). In making this determination, we view the evidence in the light most favorable to the State and determine under our totality-of-the-circumstances analysis whether the issuing magistrate had a substantial basis for concluding that probable cause existed. *Id.* Under Ark. R. Crim. P. 13.1(d), "If the judicial officer finds . . . there is reasonable cause to believe that the search will discover persons or things specified in the application and subject to seizure, he shall issue a search warrant." "Reasonable cause to believe" as defined in Rule 10.1(h) "means a basis for belief in the existence of facts which, in view of the circumstances under and purposes for which the standard is applied, is substantial, objective and sufficient to satisfy applicable constitutional requirements."

■ We do not find the affidavit to be deficient. It is settled law that the issuing judge was entitled to consider Det. Halfacre's experience when deciding to issue a warrant. *See Flaherty v. State*, 255 Ark. 187, 196, 500 S.W.2d 87, 93 (1973), *cert. denied*, 415 U.S. 995 (1974); *see also Hale v. State*, 61 Ark. App. 105, 111, 968 S.W.2d 627, 630 (1998). In the affidavit, Det. Halfacre stated that, on April 26, 1999, an employee of a chemical company in Florida told him that 500 grams of red phosphorus had been shipped to Osburn's residence and Det. Halfacre knew from his years of experience that red phosphorus was a catalyst in the methamphetamine manufacturing process. When Det. Halfacre contacted Osburn, Osburn told him that he brought the red phosphorus to McCormick's residence on April 28, 1999, and he admitted that he had purchased methamphetamine from McCormick "on a regular basis for six months or more."

 Contrary to McCormick's bald assertions, the affidavit established that Mr. Osburn had provided accurate information. The self-incriminating nature of the information was alone sufficient to establish its accuracy. *See, e.g., Maxwell v. State*, 259 Ark. 86, 531 S.W.2d 468 (1976) ("[w]e unhesitatingly find that the mere fact that Hanis' statement was self-incriminating was an adequate basis for according reliability and credibility to the informant"); *Mock v. State*, 20 Ark. App. 72, 78, 723 S.W.2d 844, 848 (1987) ("[t]he incriminating nature of a statement is itself a sufficient basis for finding it to be reliable"). Osburn admitted that he had purchased methamphetamine from McCormick, had purchased the red phosphorus for him, and had installed surveillance cameras at McCormick's residence because McCormick feared a police raid. These admissions could have led to Osburn being prosecuted for possession of methamphetamine. Similarly unpersuasive is McCormick's bald assertion that Osburn had a motive to falsify. He does not explain how false or unreliable information would help Osburn; if anything, it would motivate the police to try to make a case against Osburn. Finally, McCormick's claim that Judge Reynolds was merely a "rubber stamp for the police" is completely baseless. The record indicates that the judge followed all procedures for the issuance of the warrant, and the judge's and Det. Halfacre's testimony that the judge rejected warrants when the affidavit did not articulate sufficient probable cause was uncontraverted. Accordingly, we affirm on point II.

### ARGUMENT III: THE AFFIDAVIT FOR SEARCH FAILS TO SHOW REASONABLE CAUSE FOR A NIGHTTIME SEARCH, AND THE SEARCH SHOULD HAVE BEEN SUPPRESSED

 Arkansas law allows for search warrants to be executed at night in three circumstances: 1) the place to be searched is difficult of speedy access; 2) the objects to be seized are in danger of imminent removal; or 3) the warrant can only be safely or successfully executed at night or under circumstances the occurrence of which is difficult to predict with accuracy. Ark. R. Crim. P. 13.2(c).

> Except as hereafter provided, the search warrant shall provide that it be executed between the hours of six a.m. and eight p.m., and within a reasonable time, not to exceed sixty (60) days. Upon a finding by the issuing judicial officer of reasonable cause to believe that:
>
> > (i) the place to be searched is difficult of speedy access;
>
> or

(ii) the objects to be seized are in danger of imminent removal; or

(iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy; the issuing judicial officer may, by appropriate provision in the warrant, authorize its execution at any time, day or night, and within a reasonable time not to exceed sixty (60) days from the date of issuance.

In *Townsend v. State*, 68 Ark. App. 269, 6 S.W.3d 133 (1999), this court stated that an affidavit must set out facts showing reasonable cause to believe that circumstances exist which justify a nighttime search and conclusory language that is unsupported by facts is not sufficient.

In this case the warrant allowed for a nighttime search because the objects to be seized are in danger of imminent removal and because the warrant could not be safely executed during the day. There appears little in the record to support a claim that the objects to be seized were in danger of removal. The affidavit merely states, "It is further believed that the above described illegal items are in danger of being removed from said premises or destroyed." The affidavit gives no reason for this belief. However, support is given for the claim that the warrant could safely be executed only at night. The affidavit stated that Osborn admitted to installing surveillance cameras around appellant's home because he feared a police raid. Osborn's statement that appellant had ordered motion detectors also indicates that appellant was aware that the cameras did not provide sufficient nighttime protection and that he was willing to correct their shortcomings. Moreover, Osborn told the officer that appellant had scattered weapons all over the house.

The question is whether the statement regarding security cameras and guns was sufficient to justify a nighttime search. Two cases are instructive on this point, *Langford v. State*, 332 Ark. 54, 962 S.W.2d 358 (1998) and *Townsend, supra*. In *Langford* the court found sufficient basis where among other claims the defendant was believed armed and dangerous after threatening an informant with a semi-automatic weapon within the past week and the residence to be searched was located on a hill overlooking the only road that provided access to the property. In *Townsend* the court noted that there was legitimate concern for officer safety where the magistrate knew that the house to be searched was located on a cul-de-sac

with only one way for the police officers to approach the house and that there were firearms and a vicious dog present at the house.

■ In light of *Townsend* and *Langford* there was a sufficient factual basis to support the execution of a nighttime search based on concern for officer safety.

Affirmed.

HART, CRABTREE, BAKER, and ROAF, JJ., agree.

JENNINGS, J., concurs.

PITTMAN, ROBBINS, and GRIFFEN, JJ., would deny.

JOHN E. JENNINGS, Judge, concurring. I agree with the majority's decision to grant rehearing and with its disposition of the case on the merits. I concur separately for two reasons.

First, we need not, and cannot, decide whether the prosecutor's mere presence at the hearing on the guilty plea is enough to establish her consent to the conditional nature of the plea. In the case at bar it is clear that the circuit judge discussed the fact that the plea was conditional. The prosecuting attorney was not only present but made a recommendation as to an appeal bond.

Second, the appellant's criticism of the original panel's decision to raise the issue of the validity of the conditional plea sua sponte is unfounded. While I generally oppose the raising of issues on our own motion,[1] this situation is clearly an exception. Absent strict compliance with Rule 24.3, we have no jurisdiction to hear an appeal from a guilty plea. *Ray v. State*, 328 Ark. 176, 941 S.W.2d 427 (1997); *Simmons v. State*, 72 Ark. App. 238, 34 S.W.3d 768 (2000). When the question is one that goes to our own jurisdiction, we have not only the right but the duty to raise it on our own motion. *State v. Gray*, 319 Ark. 356, 891 S.W.2d 376 (1995).

JOHN MAUZY PITTMAN, Judge, dissenting. I agree with appellant and the majority that, under the facts of this case, Ark. R. Crim. P. 24.3 does not require an affirmative statement of consent from the prosecuting attorney. Therefore, I agree that this court erred in dismissing appellant's appeal for the reason stated in

---

[1] See my dissent in *In re Estate of Puddy v. Gillam*, 30 Ark. App. 238, 778 S.W.2d 957 (1990).

its original opinion. However, I agree with Judge Robbins that appellant did fail to strictly comply with the Rule's requirement that he reserve in writing his right to appeal the suppression issue. *See Barnett v. State*, 336 Ark. 165, 984 S.W.2d 444 (1999); *Simmons v. State*, 72 Ark. App. 238, 34 S.W.3d 768 (2000). Because I believe that this failure alone requires that appellant's appeal be dismissed, I express no opinion on the merits of appellant's arguments concerning the trial court's denial of his motion to suppress.

JOHN B. ROBBINS, Judge, dissenting. I would deny appellant's petition for rehearing because McCormick failed to strictly comply with Rule 24.3(b), and thus we did not err when we dismissed his appeal after the case was initially submitted. In our unpublished opinion dismissing his appeal we held that there was noncompliance with Rule 24.3(b) because "the record does not reveal that the prosecutor made any comments that demonstrated her consent to the conditional plea." Because of our holding, it was unnecessary to address whether or not McCormick reserved his right to appeal in writing, which is also required by the rule. McCormick failed to adequately reserve his right to appeal in writing, and for this reason alone we lack jurisdiction to hear his appeal.

The record shows that McCormick signed a document entitled "Plea Questionnaire." He checked "yes" to the question, "Do you understand the effect of a plea of guilty to the charges against you, in that there is no appeal and you can't withdraw your appeal later on?" The only indication on the document of any intention to enter a conditional plea was the handwritten notation, "Reserve right to appeal suppression issues." The document was signed by neither the trial court nor the prosecutor.

In *Barnett v. State*, 336 Ark. 165, 984 S.W.2d 444 (1999), our supreme court dismissed the appellant's appeal from a guilty plea in part because a document signed by appellant failed to adequately reserve, in writing, his right to appeal the suppression issue. In that case, the appellant signed a plea statement with the heading, "GUILTY PLEA STATEMENT," with the handwritten word "conditional" above the heading and the handwritten words "per Rule 24.3(b)" beside the heading. However, the supreme court held that there was no strict compliance with Rule 24.3(b) because the statement also reflected that appellant understood that if he pleaded guilty, he would give up various legal rights, including his "right to appeal a verdict against [him] to a higher court for review for possible error made against [him]."

Similarly, in *Simmons v. State*, 72 Ark. App. 238, 34 S.W.3d 768 (2000), we held that the appellant's attempted conditional guilty plea was ineffective to reserve his right to appeal because his "Guilty Plea Statement" explicitly contradicted the notion that his plea was conditional and that he was reserving the right to appeal. In that case, the statement signed by the appellant included a waiver of "[t]he right to appeal from the verdict and judgment, challenging all issues of fact and law." We dismissed the appeal for lack of jurisdiction, notwithstanding the fact that a "Sentence Recommendation" attached to the "Guilty Plea Statement" contained the handwritten statement: "Conditional plea — re suppression — No objection to boot camp. No further charges to be filed. May appeal suppression pursuant to Rule 28 [*sic*] of Arkansas Rules of Criminal Procedure."

In the instant case, as is *Barnett v. State, supra*, and *Simmons v. State, supra*, the writing that purports to reserve appellant's right to appeal also demonstrates that appellant understands that he is waiving that right. In light of this contradiction, it is my view that McCormick failed to strictly comply with Rule 24.3(b) and that his appeal should be dismissed without reaching the merits.

On the merits of McCormick's appeal, I agree with the result reached by the majority.

GRIFFEN, J., joins in this opinion.