Donald CAMP *v.* STATE of Arkansas

CA CR 88-157 764 S.W.2d 463

Court of Appeals of Arkansas
Division II
Opinion delivered February 8, 1989

*Lynn Frank Plemmons*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Blake Hendrix*, Asst. Att'y Gen., for appellee.

GEORGE K. CRACRAFT, Judge. Donald Camp appeals from his conviction of the offense of operating a motor vehicle while intoxicated, second offense, and operating a vehicle while his driver's license was suspended. He contends the trial court erred in not suppressing evidence obtained by police officers at the time of his stop and arrest. We find no error and affirm.

The facts are not in dispute. On the afternoon of March 20, 1987, the Arkansas State Police established a roadblock at the intersection of two state highways for the purpose of checking driver's licenses and vehicle registrations of the persons using those highways. There was no evidence that the roadblock was established for any other purpose or as a pretense for seeking evidence of other criminal activity. All vehicles passing through the roadblock were required to stop long enough for the officers to accomplish the purpose for which the roadblock had been established. When the appellant was stopped at this roadblock, the officers had no reason to suspect that he had violated any law or was engaged in any unlawful activity.

When the officers asked appellant for his driver's license, he responded that his license had been suspended. While the officers were talking to him, appellant continued to drink from an open can of beer which he was holding at the time he was stopped. The officers concluded from their observations of him that he was also intoxicated. A breathalyzer test subsequently confirmed that conclusion.

Appellant was tried for and convicted of both offenses. He appeals solely on the ground that the stop of his vehicle, without reasonable suspicion that he was involved in criminal activity, violated his rights under the Fourth Amendment to the United States Constitution, and that the trial court erred in not suppressing all evidence obtained as a result of that stop. We disagree.

The validity of arrests based on vehicle stops made on less than reasonable suspicion of criminal activity has been addressed by the Supreme Court of the United States on at least four occasions. *See Brown* v. *Texas*, 443 U.S. 47 (1979);

*Delaware* v. *Prouse*, 440 U.S. 648 (1979); *United States* v. *Martinez-Fuerte*, 428 U.S. 543 (1976); *United States* v. *Brignoni-Ponce*, 422 U.S. 873 (1975). Although none of these cases are directly on point factually, their declarations do furnish guidance. They declare that Fourth Amendment rights are implicated in such stops because the detention of a vehicle's occupants constitutes a seizure within the meaning of that amendment. They point out, however, that not all seizures are prohibited—only unreasonable ones. Therefore, the permissibility of stops on less than reasonable suspicion must be judged in each case by balancing the effect of its intrusion on the individual's Fourth Amendment rights against the promotion of a legitimate government interest.

In *Brignoni-Ponce*, the court had occasion to review the admissibility of evidence obtained as the result of an arrest made by border patrol officers who were authorized by their superiors to stop vehicles in an area near the Mexican border in order to determine if the occupants were legal residents. Under this system, the stops were made at random, and officers in the field had unbridled discretion as to which vehicles to stop and the places at which to stop them. The Court held that, although the control of illegal aliens was an important governmental interest, the intrusion on Fourth Amendment rights of the individuals outweighed the legitimate interest the government sought to promote. The Court relied heavily on the lack of any supervision of the individual officers in the field and their unbridled discretion to stop vehicles at random where there were less intrusive methods for detecting vehicles which might contain illegal aliens.

In *Martinez-Fuerte, supra*, the Court again reviewed the policy of the border patrol to control illegal entry by establishing permanent checkpoints at which all vehicles crossing that point were stopped to determine if the occupants were residents. The Court there held that these systematic stops of all vehicles were not violative of Fourth Amendment rights. It pointed out that the checkpoint stops were less intrusive on the motorists' Fourth Amendment rights, and that the subjective intrusion — the generation of concern or fright on the part of lawful travelers — was appreciably less in such stops than in the "roving-patrol" or random stops. The Court further pointed out that such stops were not made at the unbridled discretion of the

officers in the field but were directed by officials responsible for making decisions as to the effective allocation of law enforcement resources, that the potential interference with legitimate traffic was minimal, and that motorists were not taken by surprise or alarmed by the stops as they could see the officers performing legitimate duties. It also emphasized that the probability of harassment by the police officers was limited, because only those travelers passing through the check-point were stopped and there was supervisory control over the operation.

 In *Prouse, supra*, the Court considered the action of police officers acting under a police regulation permitting officers to stop vehicles at random for the purpose of checking driver's licenses and vehicle registrations in the State of Delaware. While the Court recognized that the sovereign had a legitimate interest in promoting highway safety, it held that the intrusion on Fourth Amendment rights by the unbridled discretion of the police officer in the field outweighed that governmental interest. While the government has a legitimate interest in seeing that only qualified drivers are permitted to operate vehicles and only vehicles fit for safe operation are permitted to be operated, there are less intrusive methods of promoting those interests. The Court concluded:

> Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. *This holding does not preclude the State of Delaware or other states from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative.* We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers.

*Prouse*, 440 U.S. at 663 (emphasis added).

■■ In *Brown* v. *Texas, supra*, the court discussed all three cases and concluded that:

> Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. [Citation omitted.]
>
> A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely by the unfettered discretion of officers in the field. [Citations omitted.] To this end the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, *neutral* limitations on the conduct of individual officers.

*Brown*, 443 U.S. at 50-51 (emphasis added).

The application of Fourth Amendment rights to checkpoint stops for the purpose of checking driver's licenses and registrations has been considered by both federal and state courts on many occasions. Many of the cases are collected in an annotation at 37 A.L.R. 4th 10 (1985). The discussion of all of these cases and the various matters considered by the courts in their application of the balancing test enunciated by the Supreme Court in the series of cases we have discussed would unduly lengthen this opinion. However, most, if not all, of those factors often considered are present to some degree in this case and are favorable to the trial court's ruling.

Here the roadblock was established for the purpose of ascertaining that only qualified drivers and safe vehicles were using the highways. Our code is replete with enactments regarding licensing of drivers and safety equipment of vehicles. The emergency clauses and preambles to most of those Acts state statistics and cogent reasons why these matters are of great governmental concern. No less intrusive method of determining

whether a driver is licensed has occurred to us, and, due to our method of licensing vehicles by decal only, it would be extremely difficult for officers to determine if the registration of a moving vehicle is current.

There was no evidence that this roadblock was established as a subterfuge for the detection of any other criminal activity, as only officers involved in traffic control were present. The roadblock was established at the intersection of two state highways at a point near Plumerville, Arkansas. The location was close to the town and at a point where the speed limit on the highways had been reduced to thirty-five miles per hour. The roadblock was conducted in daylight and at a time when traffic was light. There would therefore be no undue interference with legitimate traffic, and the roadblock would not cause traffic to back up and create a traffic hazard. The identity of those conducting the stop as police officers was manifest. At the roadblock were four state police patrol cars, clearly identifiable as such, with their blue lights flashing. All five officers were in full uniform and recognizable as state police officers. Interference with the traveler was minimal, as the stops lasted no longer than twenty to thirty seconds per vehicle. The officers at the roadblock were not making random or unbridled stops but stopped all vehicles passing through the roadblock. The roadblock had been authorized by the acting commander of the police district, and a non-commissioned state police officer was in charge at the scene. The officers testified that the Arkansas State Police Department had issued rules and regulations for the conduct of such roadblock stops and that those rules and regulations were fully complied with at this time.

When all of the facts and circumstances of this case are considered, we cannot conclude that the actions of the police officers in any way constituted an unreasonable interference with the appellant's Fourth Amendment rights or that the limited intrusion on those rights outweighed the promotion of the legitimate public interest it sought to promote. We cannot conclude that the trial court erred in denying appellant's motion to suppress.

Affirmed.

CORBIN, C.J., and ROGERS, J., agree.