Tracy Donell SIMMONS *v*. STATE of Arkansas

CA CR 99-1468                                    34 S.W.3d 768

Court of Appeals of Arkansas
Divisions IV, I, and II
Opinion delivered December 20, 2000
[Petition for rehearing denied January 24, 2001.* ]

*Boyd & Buie*, by *M. Christina Boyd* and *Rufus T. Buie, III*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

SAM BIRD, Judge.    Tracy Donnell Simmons brings this appeal from the Arkansas County Circuit Court's denial of his motion to suppress controlled substances found on his person and in his car. He contends that the trial court erred in refusing to

---

* HART, BAKER, and ROAF, JJ., would grant.

grant his motion to suppress evidence because the search of his person and car were without probable cause and a valid warrant and, thus, a violation of his Fourth Amendment right to be free from unreasonable searches and seizures. Following the court's denial of his motion to suppress, Simmons entered a plea of guilty to a charge of possession of marijuana with intent to deliver and was sentenced to a term of sixty months in the Arkansas Department of Correction. In entering his guilty plea, Simmons apparently attempted to preserve his right to appeal from the trial court's order denying his motion to suppress evidence pursuant to the provisions of Ark. R. Crim. P. 24.3. However, because we cannot find that Simmons has complied with the requirements of that rule, we dismiss the appeal because we lack jurisdiction to hear it.

The abstract submitted by Simmons reveals that after the court denied Simmons's motion to suppress, the prosecuting attorney, on May 25, 1999, made a written "Sentence Recommendation" stating that "[i]n accordance with the Plea Agreement between the Prosecuting Attorney and the defendant's attorney, the defendant agrees to plead guilty to the charges now pending against him in this case" and that upon the entry of such plea, the State would recommend to the court a sentence of sixty months confinement in the Arkansas Department of Correction. Other recommendations by the prosecuting attorney were that the "charges nol prossed in CR-98-168 will not be refiled as long defendant obeys all laws."

On May 27, 1999, the court held a sentencing hearing, at which Simmons pled guilty to possession of marijuana with intent to deliver. At that hearing, the following exchange took place between the court, Simmons, and defense counsel:

| THE COURT: | Let's see, you are Tracy Donnell Simmons? |
|---|---|
| SIMMONS: | Yes. |
| THE COURT: | And, Mr. Simmons, you know you are charged with possession of marijuana with intent to deliver, which is a "C" felony, and carries a range of punishment of four to ten years? |
| SIMMONS: | Yes, sir. |
| THE COURT: | And you are entitled to a jury trial? |
| SIMMONS: | Right. |
| THE COURT: | I believe we were set for one this morning? |

| | |
|---|---|
| DEFENSE ATTORNEY: | Yes, your honor. |
| THE COURT: | It's my understanding, Mr. Simmons, that you want to give up your right to a jury trial and change your plea to guilty? |
| SIMMONS: | Yes, sir. |
| THE COURT: | In exchange for a plea of guilty, the State has agreed to recommend a sentence of sixty months in the Department of Correction. |
| SIMMONS: | Yes, sir. |
| THE COURT: | And that CR-980168 will be, or it already has been nolle prossed? |
| DEFENSE ATTORNEY: | It was nolle prossed. It will not be refiled. |
| THE COURT: | It will not be re-filed as part of the — as long as you are — stay out of trouble. And you have gone over the guilty plea statement with Ms. Boyd? |
| SIMMONS: | Excuse me? |
| THE COURT: | You have gone over this statement, this guilty plea statement, with Ms. Boyd? |
| SIMMONS: | Yes, sir. |
| THE COURT: | Do you understand it? |
| SIMMONS: | Yes, sir. |
| THE COURT: | Do you have any questions at all about it? |
| SIMMONS: | No, sir. |
| THE COURT: | Is this your signature? |
| SIMMONS: | Yes, sir. |
| THE COURT: | And other than this sixty months, has anybody promised you anything, or threatened you with anything in order to get you to change your plea? |
| SIMMONS: | No, sir. |
| THE COURT: | And are you guilty? |
| SIMMONS: | Yes, sir. |
| | . . . |
| THE COURT: | All right, thank you Mr. Simmons. |

| DEFENSE ATTORNEY: | Your honor, we have additional I spoke with Mr. Dittrich on, and that was a plea. We had also discussed that he is reserving his right to appeal the denial of the Motion to Suppress Pursuant to Rule 28 (*sic*). |
|---|---|
| THE COURT: | This is a conditional plea? |
| MS. BOYD: | Yes, Your Honor. |
| THE COURT: | All right. |

The "Guilty Plea Statement" referred to by the trial court consists of two pages, and was signed by Simmons and his attorney on May 27, 1999. The statement sets forth various rights that are waived upon the entry of a guilty plea, including a waiver of "[t]he right to appeal from the verdict and judgment, challenging all issues of fact and law," and, "The right to challenge the legality of my arrest, and the admissibility and consideration of evidence which may be presented against me."

Attached to the "Guilty Plea Statement" and labeled as page 3 is the May 25, 1999, "Sentence Recommendation," signed by the prosecuting attorney, Robert Dittrich. At the bottom of the page constituting the prosecuting attorney's sentence recommendation, is a handwritten statement of unknown origin[1] stating: "Conditional plea-re suppression — No objection to boot camp. No further charges to be filed. May appeal suppression pursuant to Rule 28 [sic] of Arkansas Rules of Criminal Procedure."

The court's "Judgment and Commitment Order" appears to have been dated and signed by the judge on May 28, 1999, filed with the clerk on June 2, 1999, and Simmons filed his notice of appeal on July 1, 1999. On July 2, 1999, the court entered an order finding that Simmons had entered a conditional plea of guilty, reserving the right to appeal from the court's denial of his motion to suppress.

After Simmons filed his appeal, the State moved to dismiss it, stating that Simmons had failed to preserve it because he had not complied with the strict requirements of Ark. R. Crim. P. 24.3(b). This court denied the State's motion. Thereafter, the State sought

---

[1] The handwritten statement at the bottom of the sentence recommendation is in two different handwritings, both of which are obviously different from the handwriting of the person who filled in the handwritten portions of the sentence recommendation.

review of our denial of its motion in the Arkansas Supreme Court, but that court declined to consider the State's request for review, holding that "From the pleadings, it appears that there is a dispute as to whether appellee perfected a conditional plea of guilty in order to preserve his right to appeal. The court of appeals' decision to deny the motion to dismiss will permit that court to review that question as it considers the merits of the appeal." *See Simmons v. State*, 341 Ark. 251, 15 S.W.3d 344 (2000).

In the jurisdictional statement of its brief, the State again asserts that Simmons has failed to strictly comply with the requirements of Ark. R. Crim. P. 24.3. First, the State argues that because Simmons's abstract does not detail the pleadings upon which he claims that a written reservation of the right to appeal was made, but refers only to the circuit court's post-plea order and to the plea hearing, this court should dismiss the appeal for abstracting deficiencies. In the alternative, the State also argues that the transcript does not contain an adequate written reservation as required by the rule. It argues that Simmons's signature on the guilty-plea statement, which acknowledges his waiver of his right to appeal, is in direct conflict with the handwritten note at the bottom of the sentence recommendation that refers to his reservation of his right to appeal.

We agree with the State that Simmons has failed to comply with the requirements of Ark. R. Crim. P. 24.3 and that his appeal must be dismissed for lack of jurisdiction.

Arkansas Rule of Criminal Procedure 24.3(b) states:

> With the approval of the court and the consent of the prosecuting attorney, a defendant may enter a conditional plea of guilty or nolo contendre [contendere], reserving in writing the right, on appeal from the judgment, to review of an adverse determination of a pretrial motion to suppress evidence. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.

■ The supreme court has interpreted Ark. R. Crim. P. 24.3(b) to require strict compliance with the writing requirement in order for the appellate court to obtain jurisdiction. *Green v. State*, 334 Ark. 484, 978 S.W.2d 300 (1998). Absent compliance with the express terms of Rule 24.3(b), this court acquires no jurisdiction to hear an appeal, even when there has been an attempt at trial to

enter a conditional plea. *Ray v. State*, 328 Ark. 176, 941 S.W.2d 427 (1997).

We hold that Simmons has failed to strictly comply with the requirements of Rule 24.3 in two respects. First, there is no indication that the prosecuting attorney has consented to the conditional plea, as required by Ark. R. Crim. P. 24.3. Except for the extraneous handwriting of unknown origin that appears beneath the prosecuting attorney's signature at the bottom of his sentence recommendation, there is nothing in the sentence recommendation to indicate that a conditional plea was a part of that recommendation. Clearly, the trial judge, who had a copy of the sentence recommendation and guilty plea statement before at the time of sentencing, was not aware that Simmons's plea was conditional until he was so apprised by defense counsel after Simmons had entered his plea, giving rise to the strong probability that the handwriting of unknown origin at the bottom of the sentence recommendation was not placed there until during or after the sentencing hearing. There is no indication that the prosecuting attorney was in attendance at the sentencing hearing. In fact, the exchange between the court and counsel during the sentencing hearing, quoted at length above, clearly implies that the prosecuting attorney was not there.

The second problem with Simmons's attempted conditional plea is that his "Guilty Plea Statement" explicitly contradicts the notion that his plea is conditional and that he reserved the right to challenge the court's disposition of his motion to suppress. *See Green v. State, supra*. As already noted, the guilty plea statement provides expressly that he waives the right to challenge on appeal the admissibility and consideration of evidence which may be presented against him, and the right to appeal from the judgment entered against him. The waiver of these rights is directly contradictory to the purported reservation of the right to challenge the trial court's denial of a motion to suppress evidence.

The dissent suggests that our decision to dismiss Simmons's appeal is based on the fact that "... Simmons's attorney and the prosecutor used a preprinted form, not specifically designed for memorializing a defendant's conditional plea, and entered handwritten notations to indicate that the plea was conditional." The dissent's characterization is inaccurate for three reasons. First, there is nothing in the record to indicate that the prosecuting attorney

participated *at all* in the use of *any form* that was intended to memorialize Simmons's plea as a conditional one under Rule 24.3. Second, the form that *was* used contains language that directly conflicts with Simmons's contention that his plea was conditional. And third, the handwritten notations that were added at the bottom of the "Guilty Plea Statement" in an attempt to make Simmons's plea appear to be conditional were not only missing from the form when it was presented to the trial court at the time the guilty plea was entered, but the handwritten notations bear no resemblance to the handwriting of the person who filled out the "Sentence Recommendation" that the prosecuting attorney signed two days before Simmons entered his guilty plea, giving rise to a strong inference that the notations were placed on the form without the knowledge or consent of the prosecuting attorney.

Appeal dismissed.

ROBBINS, C.J., and JENNINGS, KOONCE, GRIFFEN, CRABTREE, and MEADS, JJ., agree.

ROAF and HART, JJ., dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I would reach the merits of this appeal and reverse and remand because the trial court erred in refusing to suppress the marijuana found in this illegal search. The majority has dismissed this appeal because they believe that Tracy Simmons has failed to strictly comply with the rule governing conditional guilty pleas, Ark. R. Crim. P. 24.3.[1] They impose this draconian penalty simply because Simmons's attorney and the prosecutor used a preprinted form, not specifically designed for memorializing a defendant's conditional plea, and entered hand-written notations to indicate that the plea was conditional. The majority also suggests that the prosecutor may not have known about or agreed to the conditional plea until after the fact. Be that as it may, Simmons's abstract, although sketchy on this point, does reflect that a conditional plea was timely entered, and

---

[1] This court has already denied the State's motion to dismiss this appeal, on March 15, 2000, months prior to submission of the case. Rather than seek rehearing of our decision, the State attempted to have the supreme court review our denial of its motion, however the supreme court refused to do so. *See Simmons v. State*, 341 Ark. 251, 15 S.W.3d 344 (2000). In this instance our denial apparently does not bar the panel from addressing this jurisdictional issue on submission of the case, without regard to whether the State had unsuccessfully pursued an earlier motion to dismiss

the record bears this out. We should address the merits of this case[2].

At Simmons's suppression hearing, Stuttgart police officer Joe Griffin testified that on the evening in question he observed Simmons sitting alone in a vehicle that was parked on the wrong side of the street outside the Sugartown Lounge. Simmons was talking to a pedestrian, who quickly left and entered the Lounge as Griffin approached. On prompting by the State, Griffin stated that he was "aware" of Simmons.[3] According to Griffin, after the individual ran off, Simmons drove from the scene "in a very fast manner," pulling out into oncoming traffic, not stopping at a stop sign, "driving very reckless and very fast." Griffin claimed that at the time, he knew that Simmons was driving on a suspended Texas driver's license and that he had previously issued Simmons a citation for it. According to Griffin, he turned on his blue lights and siren, but Simmons refused to pull over. Simmons again went through a stop sign and then stopped at the Corner Inn Caf and attempted to go inside. Griffin stopped Simmons and brought him back to his vehicle.

According to Griffin, at that time, he had not yet placed Simmons under arrest, but proceeded to run his license, "to make sure it was, uh, still suspended." When Griffin received verification that the license was still suspended, he placed Simmons under arrest, according to the "policy" of the Stuttgart Police Department. Before taking him back to the patrol car, Griffin patted down Simmons and discovered several small bags of "suspected marijuana" in the pocket of Simmons's blue jeans. When he performed

---

[2] We are required to put form over substance when determining whether there has been compliance with Rule 24.3(b). In *Tabor v. State*, 326 Ark. 51, 930 S.W.2d 319 (1996), the supreme court unequivocally stated this court cannot breathe life into a flawed appeal from a conditional guilty plea where no jurisdiction is vested. In a subsequent case, however, the supreme court did not preclude Tabor's efforts to appeal the trial court's denial of his motion to suppress. In *Tabor v. State*, 333 Ark. 429, 432, 971 S.W.2d 227, 229 (1998), the court stated: "Following this court's dismissal of the appeal, Appellant successfully petitioned the trial court to withdraw his guilty pleas pursuant to A.R.Cr.P. Rule 26.1. He then entered a conditional plea to the same charges on January 10, 1997, this time reserving in writing his right to appeal the trial court's ruling on his motion to suppress in compliance with Rule 24.3."

[3] Q. Did you — did you know Mr. Simmons?

A. [No verbal response.]

Q. Had you seen Mr. Simmons before?

A. Uh, yes, sir, I was aware of Mr. Simmons.

an "inventory search" for the wrecker service, Griffin found a larger bag of marijuana and several "blunts." At the detention facility, another small bag of marijuana was found in Simmons's t-shirt pocket.

On cross-examination, Griffin admitted that he had only seven months' experience at the time of the arrest, and was aware that he was operating in a high-drug-trafficking area. He also admitted that he did not see Simmons's face when he approached his vehicle, however, he was "absolutely sure" who it was because Simmons "is a large gentleman, with a large profile," and he was "aware" of Simmons's vehicle. However, it was brought out that despite the confidence he expressed in his trial testimony, Officer Griffin's report stated that when he approached Simmons's vehicle, he knew it to be occupied by an "unknown black male." When asked about discrepancies between his hearing testimony and his report, Griffin admitted that some of what was in the report was incorrect, but "not all of it." Griffin admitted that he did not record in his report the fact that Simmons's license was revoked or that Simmons was under arrest when he performed the pat-down search. Griffin also insisted that even though his report stated that he noticed a bulge in Simmons's hip pocket when Simmons was reaching for his license in his back pocket and subsequently performed a *Terry* frisk, Simmons was under arrest before he searched him. Griffin admitted that Simmons was very cooperative in surrendering his license and was not combative at any time and that he noticed nothing that would make him believe that Simmons was armed. He also admitted that during his pat-down of the bulge, he felt it to be "soft in nature," and admitted that a weapon would not be soft.

The trial judge denied Simmons's suppression motion, stating:

> I will deny the Motion to Suppress. This *Dickerson* case is distinguishable. It says that it was discovered only after squeezing, sliding, and otherwise manipulating the contents of the pocket and it was a pocket that the officer already knew did not contain a weapon. It does not sound like it would fit here. Thank y'all.

Simmons argues that Officer Griffin lacked reasonable suspicion to stop his vehicle. He contends that as Officer Griffin approached, he did not have reasonable suspicion of criminal activity, as required by Rule 3.1 of the Arkansas Rules of Criminal Procedure. He challenges Griffin's trial testimony about recognizing

Simmons, both because the officer never saw Simmons's face and because Officer Griffin's report stated that he was an "unknown black male." He further argues that Officer Griffin's report does not mention any of the traffic offenses that Griffin testified about at trial. Citing *Camp v. State*, 26 Ark. App. 299, 764 S.W.2d 463 (1989), Simmons argues that a random stop of a driver violates the Fourth Amendment. This argument has merit.

When this court reviews a trial court's denial of a motion to suppress, it makes an independent determination based on the totality of the circumstances, but will only reverse if the trial court's decision was clearly against the preponderance of the evidence. *Hill v. State*, 64 Ark. App. 31, 977 S.W.2d 234 (1998). Rule 3.1 of the Arkansas Rules of Criminal Procedure states:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

A "reasonable suspicion" is defined as "a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." Ark. R. Crim. P. 2.1.

First, while Officer Griffin may well not have had reasonable suspicion when he first approached Simmons's vehicle, if the officer's trial testimony is to be believed, reasonable suspicion accrued when he recognized Simmons as a person whom he had recently cited for driving on a suspended driver's license and when Simmons committed the various traffic offenses that he allegedly committed when he left the area. Of course it is *possible* that when

Simmons saw Officer Griffin approach in a marked police car that had not yet activated its blue lights or siren, his technique for avoiding arrest was to drive away recklessly at a high rate of speed, sail through two stop signs, and attempt to go into a night club. However, if these traffic offenses were committed, Officer Griffin had reasonable suspicion to make the stop and arrest. A law-enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that the person has committed any violation of the law in the officer's presence. Ark. R. Crim. P. 4.1(a)(iii). The question therefore is simply whether Officer Griffin's credibility is assailable on appeal.

It is so well settled as to be axiomatic that the credibility of the witness in this instance was for the trial court to weigh and assess. *See, e.g., State v. McFadden*, 327 Ark. 16, 938 S.W.2d 797 (1997). However, in *Findley v. State*, 300 Ark. 265, 778 S.W.2d 624 (1989), the supreme court stated: "while we concede the trial judge is better able to assess credibility, we review the proceedings below independently of the trial court and base our conclusions on the totality of the circumstances."

In this regard, Officer Griffin's report stated that the subject he approached was "an unknown black male," not someone he had cited for driving with a suspended license shortly before the encounter. The report also stated that he did a pat-down search prior to formal arrest, which conflicts with his hearing testimony. Moreover, the scope of the search as described by Officer Griffin, i.e., a pat-down of Simmons's outer clothing is consistent with a *Terry* frisk, not a full search incident to arrest. The fact that more marijuana was found when Simmons was searched at the detention center further corroborates the cursory nature of the pat-down search. In this instance, the officer's testimony in court was so diametrically opposed in every material part to two written reports prepared immediately following Simmons's arrest as to lead to the inescapable conclusion that the trial testimony lacked credibility.

Simmons's remaining arguments hinge on whether he was under arrest when Griffin patted him down. Simmons argues that under *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny, Officer Griffin was not justified in performing a *Terry* frisk because the officer did not articulate any basis for his belief that he was presently armed and dangerous. He contends that Griffin's trial testimony was

that Simmons was cooperative and not combative, and he did not observe anything that he believed to be a weapon. Simmons acknowledges that Officer Griffin testified that he noticed a "bulge" in Simmons's pants pocket and that the bulge prompted the search; however, Griffin did not indicate that he suspected that the bulge was a weapon. Simmons also argues that even if Officer Griffin was justified in his performance of a *Terry* frisk, the scope of the search exceeded the permissible limits set forth in *Terry* and *Minnesota v. Dickerson,* 508 U.S. 366 (1993), because the purpose of the frisk is not to discover evidence, but to allow the officer to pursue the investigation without fear of violence. Simmons acknowledges that the "plain-feel" doctrine allows an officer to seize items that he readily identifies as contraband; however, Officer Griffin admitted that he was not able to identify the "bulge" as contraband until he removed it from the pocket.

The standard for justifying a *Terry* frisk is whether a reasonably prudent man in the circumstances would believe that his safety or the safety of others was in danger. *Kearse v. State,* 65 Ark. App. 144, 986 S.W.2d 423 (1999). However, Simmons either was, or was not, under arrest when Officer Griffin conducted the pat-down search, depending on which version of the events is correct. Officer Griffin's trial testimony was that Simmons was already under arrest when he performed the pat-down. The rules in *Terry* simply do not apply to a search incident to arrest. *See, e.g., Blockman v. State,* 69 Ark. App. 192, 11 S.W.3d 562 (2000). By the same token, if the seizure of the marijuana was conducted pursuant to a search incident to arrest, *Terry* and the plain-feel doctrine are also not implicated. However, Officer Griffin's in-court testimony differs markedly from his written reports on this important factual matter, and Simmons's arguments consequently have merit. This case should be reversed.

I respectfully dissent.

HART, J., joins only with regard to whether the issue was preserved for appellate review.