Robert Stephen HILL *v.* STATE of Arkansas

CA CR 02-700                                100 S.W.3d 84

Court of Appeals of Arkansas
Division II
Opinion delivered March 12, 2003

*James E. Hensley, Jr.*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Katherine Adams*, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. This appeal arose from a bench-trial criminal conviction of appellant, Robert Stephen Hill, in Lonoke County, following a purported conditional plea of guilty to the charge of possession of controlled substance, methamphetamine, a Class C felony. Appellant argues that (1) the arresting officers lacked the requisite suspicion to detain him, as established by Ark. R. Crim. P. 3.1 and Ark. Code Ann. § 16-81-203, (2) the arresting officers exceeded the scope of a Terry frisk and Ark. R. Crim. P. 3.4, (3) that appellant did not consent to the search of his person, and (4) that the denial of his motion to suppress was reversible error. Because appellant's purported conditional guilty plea did not conform with Ark. R. Crim. P. 24.3(b) (2002), we dismiss the appeal for lack of jurisdiction.

On January 29, 2002, the trial court held a suppression hearing pursuant to appellant's motion to suppress. During that hearing, the following facts developed in testimony. On September 5, 2000, England police officer Todd Brown received a dispatch to the home of Judy Holladay. When he arrived at that home, Holladay informed him that there had been a disturbance involving drugs. She told the officer that the suspects, a male and a female, were in a blue S-10 pickup truck. Holladay also stated that the suspects had crystal meth "on them." Brown relayed that information to his chief. Brown testified that he "believed the suspect would be in possession of drugs after talking with Ms. Holladay." Chief Cook later testified that he "would not characterize the stop as being for the sole purpose of finding drugs," but that it was a stop conducted in response to a disturbance call. However, Cook also stated that there "were allegations of drugs being in the vehicle," that he was "familiar with the people who made the complaint," that this "was not an anonymous tip," that there "were previous drug problems in that area and at that residence," and

that his department "had never used the informant before and [he] did not know if she has ever lied to [him]."

Chief Cook was the first to stop appellant's vehicle based on the information thus received. Officer Brown arrived second. Appellant was the driver of the truck. Cook informed them of the reason for the stop. According to Cook's testimony, he asked appellant out of the truck and conducted a "protective pat-down for weapons and found none." After that, Cook checked appellant's papers. Cook testified that he conducts pat-down searches as a matter of policy "whenever there is a possible narcotics or a disturbance involved or where there is a weapon present, whether it is reported or unreported." However, Cook also testified that appellant had done nothing in his presence that would have led Cook to believe that appellant had weapons.

Appellant then gave verbal permission for the officers to search the truck. The officers did not find drugs or other contraband inside the vehicle. However, Chief Cook had noticed, and felt during the pat-down, a bulge in appellant's right front jeans pocket. Thus, after completing the search of the vehicle, Chief Cook asked appellant "if he would mind showing [him] what he had in his right-hand front pocket." Cook testified later that at that point he suspected that the item in appellant's pocket might be a pill bottle often used in narcotics crimes. Appellant testified that Cook "stayed at [his] pocket and kept squeezing from the outside of [his] pants," but that Cook never reached into the pocket. Appellant "complied" with the officer's request and handed over a plastic bottle without a label—according to Cook, he did so "immediately, without hesitation." Apparently, though, appellant at first just pulled out a lighter, upon which Cook specifically requested that he wanted to see the "round object" in appellant's pocket. Cook specifically testified that he did not himself remove the item from appellant's pocket because appellant then was not yet under arrest. When Cook asked appellant what was in the bottle, appellant claimed that he did not know. Appellant later testified that he believed the substance to be Tylenol because the bottle was a Tylenol bottle. Appellant also stated that he never looked into the bottle, but that he had received it for headaches at the home of Berniece Holladay, Judy Holladay's mother and a

friend of his female passenger, where they had stopped earlier. Cook saw a white, powdery substance in the bottle. At that point, the officers arrested appellant and his passenger. Both arrestees received their *Miranda* readings at that time.

Because Chief Cook's police car did not have a police camera and Officer Brown's patrol unit arrived behind Cook's patrol car, Brown did not use his police camera in the incident at issue.

Appellant testified that he did not know Judy Holladay, that he had not been at her house, and that he had not smoked drugs with her. He stated—when Chief Cook informed him of the reason for the stop—that his female passenger told him that "some girl had a problem with her." The passenger later testified that Judy Holladay did not like her.

Toward the end of the hearing, counsel for appellant argued that the holding of *Terry v. Ohio*, 392 U.S. 1 (1968), required a conclusion that a *Terry* search was not warranted. Furthermore, counsel for appellant specifically argued that Ark. R. Crim. P. 11.1 requires a finding that consent cannot be the product of actual or implied duress or coercion, and that an officer asking a defendant to remove the items from his pocket would be more in the form of an order than a request. The trial court found that there was a conflict in testimony regarding whether the officer asked to see the contents of the pocket or whether he ordered appellant to empty his pockets. After hearing the State's closing argument, the trial court denied the motion to suppress the evidence.

On March 20, 2002, less than two months after the suppression hearing, appellant entered what he asserts to be a conditional plea of guilty to the charge of possession of controlled substance, methamphetamine, a Class C felony. Appellant received a sentence of 60 months' imprisonment, with 30 months suspended. From this, he brings the current appeal.

*Lack of Jurisdiction to Hear Appeal*

Notably, the State does not argue that appellant's attempted conditional guilty plea fails to comply with the require-

ments of Ark. R. Crim. P. 24.3(b) (2002). However, whether a defendant has complied with Rule 24.3(b) is a jurisdictional question, *see Ray v. State*, 328 Ark. 176, 941 S.W.2d 427 (1997), and as such, we must raise the issue *sua sponte*. When a defendant pleads guilty to a charge, he or she waives the right to appeal that conviction. *Green v. State*, 334 Ark. 484, 978 S.W.2d 300 (1998). For relevant purposes before us, only a conditional plea pursuant to Rule 24.3(b) enables a defendant to retain the right to appeal an adverse suppression ruling. Ark. R. App. P.—Crim. 1(a) (2002); *Barnett v. State*, 336 Ark. 165, 984 S.W.2d 444 (1999).

Rule 24.3(b) states:

> With the approval of the court and the consent of the prosecuting attorney, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of an adverse determination of a pretrial motion to suppress evidence. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.

Our supreme court has interpreted Rule 24.3(b) to require strict compliance with the requirement that the right to appeal be reserved in writing. *Barnett v. State, supra*. This is so even when there has been an attempt to enter a conditional plea below. *Ray v. State, supra*. In addition, the writing must be contemporaneous with the defendant reserving his or her right to appeal. *Tabor v. State*, 326 Ark. 51, 930 S.W.2d 319 (1996). We also look for an indication that the conditional plea was entered with the approval of the trial court and the consent of the prosecuting attorney. *Noble v. State*, 314 Ark. 240, 862 S.W.2d 234 (1993).

In the present case, the record contains a writing entitled "GUILTY PLEA AGREEMENT," with the handwritten word "Conditional" appearing above it. The document is signed by the prosecuting attorney, appellant's attorney, and appellant, with a handwritten date of March 20, 2002, and a court file stamp of the same date. The document contains the following pre-typed list of rights:

> I understand that I have the following rights:
>
> (a)   The right to remain silent and make no statements.

(b) The right to be represented by an attorney.

(c) The right to a speedy, public trial by a jury which must unanimously find me guilty beyond a reasonable doubt on each element of any charge.

(d) The right to be found guilty of a lesser charge and/or punishment than the original charge.

(e) The right to personally confront and cross-examine every witness, and the right to call witnesses to testify for me.

(f) [Illegible.]

(g) The right to question all facts, circumstances and evidence, and the right to confront and raise all legal issues, rights and theories.

(h) To file a petition within 30 days that my attorney was ineffective, and my right to appeal be thus extended 30 days past a hearing on this motion.

I understand that if I plead guilty I give up and waive all my rights, and if the plea is accepted by the Court, it cannot be changed nor the punishment reduced.

By pleading·guilty I will lose my right to vote and the right to possess firearms. I may also incur employment and various other indirect problems from this conviction.

Each prior or later conviction can increase the time of punishment required before parole eligibility [sic].

No one has threatened me nor promised me anything that has caused me to plead guilty.

I understand the Prosecuting Attorney will make a sentence recommendation to the Court based on our plea agreement, but if the plea agreement is not accepted, my guilty plea will be withdrawn and the statements herein will not be held or used against me.

I hereby plead guilty to having committed the above stated crime(s), and understand by doing so I give up all my rights.

Appellant hand-initialed every enumerated item quoted above, from (a) to (h), except (f), by marking them with "RSH" on the

left hand margin. Item (f) has been marked out to the point of being illegible.

▪ Applying *Barnett v. State, supra,* to the instant case, we hold that appellant failed to strictly comply with Rule 24.3(b). The document does not specifically state that appellant reserves his right to appeal the outcome of the suppression hearing. Rather, the document contains language to the effect that if he pleads guilty, he gives up and waives all his rights. Moreover, the document fails to demonstrate that the trial court approved a conditional plea. Therefore, we lack jurisdiction and dismiss the appeal.

Appeal dismissed.

BIRD, J., agrees

GRIFFEN, J., concurs.

WENDELL L. GRIFFEN, Judge, concurring. I concur in the outcome of this case because existing case law appears to leave us no room to decide otherwise. However, I write separately to express my concern that Ark. R. Crim. P. 24.3(b) (2002) requires either a clarifying rule revision or else clear, elucidating guidance from our supreme court. Upon my review of applicable Arkansas law, it appears that litigants and our courts are struggling to understand what constitutes strict compliance with Rule 24.3(b). Thus, despite what trial counsel and the trial court in this case might have intended, we must dismiss the present appeal where (1) appellant claimed that law enforcement officers violated his Fourth Amendment rights; (2) appellant properly reserved his arguments for appeal, were it not for the jurisdictional question involving his proper strict compliance with Rule 24.3(b); (3) appellant and the State appear to have attempted to enter into a valid conditional plea agreement, and where (4) the document purporting to demonstrate the existence of a conditional plea was part of the circuit-court-certified trial record, despite lacking the trial court's signature or other indices of its approval.

Existing law applicable to Arkansas conditional pleas is quickly summarized. *See, e.g.,* David J. Sachar, *Overview of Ark. Warrantless Search and Seizure Law,* 23 U. ARK. LITTLE ROCK L.

Rev. 423 (2001) (discussing Rule 24.3(b) generally, but not detailing what strict compliance entails specifically). Specifically, Ark. R. Crim. P. 24.3(b) states:

> With the approval of the court and the consent of the prosecuting attorney, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of an adverse determination of a pretrial motion to suppress evidence. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.

Our supreme court requires strict compliance with the Rule's requirement that the right to appeal be reserved in writing. *Barnett v. State*, 336 Ark. 165, 984 S.W.2d 444 (1999). This requirement applies even when there has been an attempt to enter a conditional plea below. *Ray v. State*, 328 Ark. 176, 941 S.W.2d 427 (1997). The writing must be contemporaneous. *Tabor v. State*, 326 Ark. 51, 930 S.W.2d 319 (1996) (finding that a subsequent order by the trial court with an attached signed plea statement, following a remand from the court of appeals, was insufficient to "breathe life into a moribund appeal where no jurisdiction originally vested" because appellant failed to make his conditional plea contemporaneously). There must be an indication that the conditional plea was entered with the approval of the trial court and consent of the prosecuting attorney. *Noble v. State*, 314 Ark. 240, 862 S.W.2d 234 (1993). Furthermore, the supreme court emphasized that conditional guilty pleas only preserve arguments for appeal stemming from hearings upon motions to suppress evidence. *Payne v. State*, 327 Ark. 25, 937 S.W.2d 160 (1997). Under Arkansas law, a conditional plea of guilty becomes final when the appellant does not prevail on appeal. *Scalco v. City of Russellville*, 318 Ark. 65, 883 S.W.2d 813 (1994) (finding that there was a proper conditional plea of guilty, but that appellant had failed on appeal, and that therefore the trial court had no jurisdiction to rule on appellant's motion to withdraw his guilty plea following his failure on appeal).

Of all our cases generally citing or addressing Rule 24.3(b) and its requirements, few detail what constitutes strict compliance with the Rule. At this point it may be worth noting that Arkansas appears to be in a somewhat distinct group of states in which

compliance with various, differing conditional-plea requirements is strictly enforced — i.e., as opposed to states using a "substance-over-form" approach. *See State of Hawai'i v. Lei*, 95 Haw. 278, 21 P.3d 880 (2001) (providing a very useful overview of both federal and state cases analyzing conditional-plea rules substantially similar to Arkansas's Rule 24.3(b)). A number of Arkansas cases summarily refer to facts indicating that the appellant failed to perfect a conditional guilty plea, but do so in a manner suggesting that there was no document that even remotely falls under the scope of Rule 24.3(b). *See, e.g., Noble v. State, supra* (finding nothing to show that appellant conditioned his guilty plea by reserving, in writing, his right to appeal); *Ray v. State, supra* (finding nothing in the record to support appellant's claim that a conditional plea existed where the plea in the record simply states that appellant pleads guilty, acknowledges his rights he is waiving, the offenses to which he pleads guilty, and the agreed recommendation of punishment). In one such case, *Burress v. State*, 321 Ark. 329, 330, 902 S.W.2d 225, 226 (1995), the supreme court stated that the record reveals a reference by the trial court to a "document entitled Guilty Plea Statement," but neither the abstract nor the trial record contained any reference to a writing reserving the right to review. In yet another case, our supreme court stated that the requirement of "reserving in writing" the right of review was not met, explaining the relevant law surrounding Rule 24.3(b), but without going into factual detail. *Bilderback v. State*, 319 Ark. 643, 646-47, 893 S.W.2d 780, 782 (1995).

In *Barnett v. State, supra*, the supreme court held that the appellant's purported conditional plea of guilty was not in strict compliance with Rule 24.3(b). In that case, the plea statement in question contained language that the appellant "understood that if he pleaded guilty, he would give up various legal rights, including his 'right to appeal a verdict against [him].'" *Id.* at 169, 984 S.W.2d at 446. Furthermore, the court in *Barnett* stated that the plea agreement failed to demonstrate that the trial court approved a conditional plea, or that the prosecutor consented to a conditional plea—without explaining how such demonstration ought to appear. *Id.* at 170, 984 S.W.2d at 447.

The *Barnett* court distinguished that case from the earlier opinion in *Green v. State*, 334 Ark. 484, 978 S.W.2d 300 (1998). In *Green*, the supreme court held that Rule 24.3(b) was satisfied where the handwritten word "conditional" appeared above the typed heading "PLEA STATEMENT," signed by the defendant, and where that portion of the plea statement acknowledging waiver of the right to appeal was crossed out and initialed by the defendant. Notably, *Green* did not address what constitutes a *contemporaneous* writing for purposes of Rule 24.3(b), or whether the writing sufficiently documented consent of the prosecutor, or approval of the court.

The Arkansas Court of Appeals addressed the issue of strict compliance in more detail in *Simmons v. State*, 72 Ark. App. 238, 34 S.W.3d 768 (2000). In that case, we found that the appellant failed to perfect his conditional guilty plea. The case involved a "guilty plea statement," signed by the appellant and his attorney. The statement set forth various rights that are waived upon the entry of a guilty plea, "including a waiver of the 'right to appeal from the verdict and judgment, challenging all issues of fact and law.'" *Id.* at 241, 34 S.W.3d at 770. The two-page guilty-plea statement was attached to what was labeled as page 3 and entitled as "sentence recommendation," dated earlier than the guilty-plea statement, and signed by the prosecuting attorney. Page 3 contained a handwritten statement of unknown origin, stating: "Conditional plea — re suppression — No objection to boot camp. No further charges to be filed. May appeal suppression pursuant to Rule 28 [*sic*] of Arkansas Rules of Criminal Procedure." *Id.* In a footnote, this court remarked that the handwritten statement appeared in two different handwritings, both of which were different from the handwriting of the person who filled in the handwritten portions of the sentence recommendation. *Id.* On appeal, we found no indication that the prosecutor consented to the conditional plea and that he clearly had not been present during the sentencing hearing. *Id.* at 243, 34 S.W.3d at 771. Furthermore, the guilty-plea statement contained express language to the effect that the appellant waived his right to appeal by making his plea.

In yet another opinion by our court, we pointedly stated that Rule 24.3(b) does not specify how courts and prosecutors are to convey approval and consent in order to manifest strict compliance with the rule. *McCormick v. State*, 74 Ark. App. 349, 48 S.W.3d 549 (2001). There, we held that where the prosecutor was present when a defendant entered a conditional plea of guilty, contested any objectionable aspects of the disposition of the case, and allowed the plea to be entered as a "negotiated plea of guilty," the requirement of subsection (b) of Rule 24.3 was satisfied. *Id.* Specifically, we held that "negotiated" implies consent by the prosecutor, because such a negotiation could only take place between the defendant and the State. *Id.*

Finally, in *McMullen v. State*, 79 Ark. App. 15, 82 S.W.3d 827 (2002), we held that a plea questionnaire and written judgment and commitment order did not satisfy the writing requirement for a conditional plea of guilty. Specifically, the questionnaire did not reflect that the guilty plea was conditional and instead contained the question: "Do you understand the effect of a plea of guilty to the charges against you, in that there is no appeal and you can't withdraw your plea later on?" Defendant answered this question with "yes." The judgment and commitment order contained the handwritten notation "Conditional Plea," but was not signed by the defendant and gave no indication as to who wrote it or when it was written. *Id.*

Thus, we are faced with a procedural rule that apparently creates confusion for Arkansas litigants and courts, even though it obviously would be of crucial importance to defendants to know precisely how to perfect their conditional pleas of guilty. As previously stated, the law is anything but clear on what exactly constitutes strict compliance. Whereas some cases specifically mention lack of proof that the prosecutor and trial court consented and approved the conditionality of the guilty plea, others merely focus on one or two elements of the strict-compliance rule—without making any findings that the remaining elements were sufficiently met. *See, e.g., Green v. State, supra* (finding a handwritten "conditional" above the typed words "plea statement" sufficient, where waiver of appeal was crossed out, and

defendant had signed; but not finding that either the court or prosecutor approved and consented).

In the present case, for instance, the document entitled "guilty plea agreement" does not contain an express waiver of appeal. Instead, it contains statements such as the right to question facts, to confront factual and legal issues, the right to a trial, and a statement to the effect of giving up and waiving "all [his] rights." These statements appear to refer to a defendant's rights regarding trial — all of which he waives upon pleading guilty — and not his rights regarding appeal. Furthermore, the signatures of the defendant, his attorney, and the prosecutor appear on one page. The page is dated March 20, 2002, next to the defendant's signature. The document does not provide for any further dating next to any of the other signature lines. The document carries a file-stamp by the circuit court, dated the same day. Both the handwritten word "Conditional" and the signature of the prosecutor could very well stem from the same hand—and lest there be doubt, we did consider handwriting at least implicitly in *Simmons v. State, supra.* And finally, the document in question is part of the certified trial record. It is difficult to imagine how the "conditional" plea of guilty made its way into the trial record without the trial court's approval. Even so, the document does not contain the trial court's signature, let alone evidence that the signature connoted trial court approval of an explicit agreement by the defendant, his counsel, and the prosecutor that the right to appeal the denial of the suppression motion was reserved.

After a thorough review of the applicable case law, one is left with the impression that, to be effective, a conditional guilty plea agreement must be evidenced by a contemporaneous writing which unequivocally declares that the defendant pleads guilty, but expressly reserves the right to appeal the trial court's decision to deny a suppression motion as permitted by Rule 24.3(b). Furthermore, such conditional guilty-plea agreements should bear the signature of the defendant and defense counsel, and demonstrate the prosecutor's consent and the court's approval as proven by their signatures and appropriate text in the document. Until our supreme court declares that this is what must be done to constitute strict compliance with Rule 24.3(b), perhaps supplemented by a

model form that trial courts, prosecutors, and defense counsel can use when defendants indicate that they want to enter conditional guilty pleas, trial courts, prosecutors, defense counsel, defendants, and appellate judges will continue to trip and stumble.